No. 2526.

ANN K. HUSSEY ET AL. *v.* JOHANNA MOSER.

1. COLOR OF TITLE—LIMITATION.—The re-enactment of the law defining color of title (Rev. Stat., art. 3193) with no change in its language, carried with it the construction given to the former statute in Marsh v. Weir, 21 Texas, 97. It is only such a defective muniment of title as is not wanting in "intrinsic fairness and honesty" that will support the statute of limitations of three years. Color of title can not, in contemplation of the statute, exist when one of the links in the chain of title has been fraudulently obtained.

2. PRACTICE—CHARGE OF COURT.—A 'judgment rendered on a verdict returned under an erroneous charge, will not be disturbed if under the facts in evidence the same verdict would necessarily have been rendered if a proper charge had been given.

3. STATUTE CONSTRUED—HOMESTEAD—LIMITATION.—Construing article 3201, Revised Statutes, in connection with Kelly v. Whitman, 41 Texas, 647; Simonton v. Mayblum, 59 Texas, 7, and Smith v. Uzzell, 61 Texas, 221, *held*, that the law which suspends the operation of the statutes of limitation as against the wife during coverture, has no application to suits involving the homestead when it is claimed as the separate property of the husband, or as part of the community estate. In either case the right of the wife to maintain an action during coverture in her own name, exists.

4. CASES DISTINGUISHED.—This case distinguished from Simonton v. Mayblum, 59 Texas, 7, and Smith v. Uzzell, 61 Texas, 221.

5. LIMITATION.—An exception in favor of the wife who sets up claim to the homestead merely as such, can not be engrafted on the statutes of limitation by the courts, and the fact that the husband, in alienating the property, has acted in hostility to her claim will not suspend the operation of the statute as against one in possession claiming under deed. See opinion for facts to which this applies.

6. LIMITATION.—A married woman directed her daughter to sign in her name a conveyance of property which had once been occupied as a homestead by the husband and wife, and which was community property. The wife believed the instrument was a lease. It was a deed absolute. The daughter signed and acknowledged the deed, which was recorded. The fraud practiced by the husband was soon discovered by the wife, who on account of the husband's physical condition, refrained attempting to procure a cancelation of the deed until after an innocent purchaser and his vendor had been in actual, peaceable adverse possession of the property for eight years, when after the death of the husband the widow sued to recover the property; *held* that without considering the question of estoppel, the plaintiff was barred by limitation.

APPEAL from Galveston. Tried below before the Hon. W. H. Stewart.

*Frank M. Spencer* and *James B. Stubbs,* for appellants.

*Barnett & Hanscom,* for appellees.

GAINES, ASSOCIATE JUSTICE. This suit was brought by appellants to recover certain lots with their improvements in the city of Galveston. Both parties claim under a conveyance to one M. P. Hussey, who was dead at the time the suit was instituted. He was the husband of Ann K. Hussey, and the father of the other appellants. The evidence showed that the lots in controversy were community property, and were occupied by Hussey and wife as their homestead from about the year 1866 until the year 1873, when the improvements were destroyed by fire. Mrs. Hussey testified that they never abandoned the property as their homestead, and never acquired any other. In October, 1873, she was keeping a boarding house in Marshall. Her husband sent a deed to her, which she supposed was a lease, as she had been expecting a lease to be sent up for her signature. Being sick at the time the paper was received, she gave it to her daughter to sign for her, and, as is to be inferred from the evidence, instructed her to go before an officer and acknowledge it. The daughter signed the deed in her

mother's name, and went before the deputy county clerk of Harrison county and acknowledged it. The officer mistook her for Mrs. Hussey, and attached a certificate in the statutory form to the effect that Ann K. Hussey, wife of M. P. Hussey, appeared before him and made a proper acknowledgement of the conveyance. The fact was very distinctly proved that Mrs. Hussey did not acknowledge the deed, though there seems some discrepancy in the testimony as to the details of the transaction. The deed was subsequently delivered to J. M. Rogers, the grantee, who paid the husband the sum of two thousand eight hundred dollars, the consideration therein expressed. He sold the property to Mrs. Isabella Hogadon in August, 1879, and in February, 1882, she sold and conveyed it to Johanna Moser, one of the appellees. The latter paid for the property without notice of any adverse claims. It was proved that appellees and those under whom they claim had had continuous and peaceable adverse possession of the premises, under recorded deeds, from the date of the conveyance to Rogers in 1873, down to the institution of this suit in May, 1885. M. P. Hussey, the husband of appellant Ann K. Hussey, died in March, 1882. Mrs. Hussey testified to facts which show that very soon after the deed was signed and acknowledged by her daughter, she became aware of the fact that it was a conveyance of the property, but that she "took no steps on account of her husband's physical condition." It was admitted that at the time of the conveyance to Rogers, M. P. Hussey had a consecutive chain of title from the State down to himself to the premises in controversy.

Under this state of facts the court charged the jury, in effect, to find for appellees if they had held continuous, peaceable and adverse possession of the lots for three years after the death of Hussey and before the institution of the suit. This is assigned as error; and we think the assignment well taken. Color of title has been defined to be "that which in appearance is title, but which in reality is no title" (Wright v. Mattison, 18 How., 56); but it is decided that the words are not used in our statute in this sense. (Marsh v. Weir, 21 Texas, 97.) If there could have been any doubt about this construction, it was removed by the re-enactment of the law in substantially the same language after the opinion was delivered in the case just cited. (Rev. Stats., art. 3193.) It is only such a defective muniment of title as is not wanting in "intrinsic fairness and honesty" as

will support the statute of limitations of three years. If the witnesses who testified as to this matter are to be believed, the deed, so far as the rights of Mrs. Hussey are concerned, was fraudulent. She was induced to believe it was a lease, and, acting under that belief, she had caused her daughter to sign it. Though the conveyance was a fraud upon the grantee, it was equally fraudulent as to her. Not having been acknowledged by her, it did not convey the property, if a homestead, and the transaction was in no sense fair and honest. It is, therefore, not color of title within the meaning of the statute. If she had consented to the sale, signed and acknowledged the deed, and a defective certificate had been placed upon it, it may be that a different rule would apply. But such is not the question before us, and we give no opinion upon it.

But because it is an uncontroverted fact that the premises in controversy were adversely occupied by appellees and those under whom they claim from 1873 until this suit was brought, in 1875, it is insisted, on behalf of appellees, that the action of appellants was barred by the statute of limitation of ten years, and that for this reason the judgment should be affirmed. Appellees asked a charge upon this subject, and this having been refused, its refusal is made the ground of a cross assignment of error. In Galveston v. Morton, 58 Texas, 409, the present Chief Justice uses this language: "This court has always refused to set aside a verdict correct in itself because of an error of the judge in his charges, when if a correct charge had been given they would necessarily have come to the same conclusion." (Merriwether v. Dixon, 28 Texas, 19.) This has been the uniform practice of the court, as is shown by a long line of decisions. (See Bowles v. Brice, 66 Texas, 724; Railroad Company v. Delahunty, 53 Texas, 206, and the cases cited in those two opinions.) If, therefore, the proposition be sound that the statute of limitations ran against appellant, Mrs. Hussey, before the death of her husband, the error in the charge of the court is immaterial, and the judgment should not be reversed.

In Simonton v. Mayblum, 59 Texas, 7, this court held that "the statute runs in favor of one who holds adverse possession of land that is claimed by the plaintiff to be a homestead for himself and wife, as it does when it is claimed to be a mill, or a store, or a farm." The case was decided upon this proposition, although there was another ground upon which the decision of the court was also maintained. The question again came be-

fore the court in Smith v. Uzzell, 61 Texas, 221, and after a very careful consideration the same doctrine was re-affirmed. In the latter case the alleged homestead was the separate property of the husband, but no stress is laid upon this fact in the opinion, and we apprehend that there is no difference in principle whether the property be of the community estate or of the separate estate of the husband. In either case, the wife's power to sue alone for the enforcement of her homestead rights, when her husband refuses to join her, is recognized by our courts. (Kelly v. Whitmore, 41 Texas, 647.) Article 3201 of the Revised Statutes reads as follows: "If any person entitled to commence suit for the recovery of real property, or to make defense founded in title thereto, be, at the time such title shall first descend, or adverse possession commence * * a married woman * * the time during which such disability shall continue shall not be deemed any portion of the time limited for the commencement of such action, or the making of such defense." The effect, therefore, of the previous decisions upon this subject is to hold that this article applies only to the wife's separate property, and not to that in which she holds merely the homestead interest conferred by our Constitution. In the present case, the sale of the homestead was the voluntary act of the husband; in the cases cited (Simonton v. Mayblum, and Smith v. Uzzell), the sale was involuntary, and there seems to be a substantial reason why, in such cases, the Legislature should have made a different rule to apply.

In case of an attempted involuntarily alienation it is the interest of the husband to protect the wife in the enjoyment of her homestead; but no such presumption can be indulged when he attempts the sale and conveyance himself. In the latter case his conduct manifests his purpose to act in hostility to her rights, and he may be presumed to exert his influence and power over her to prevent her from bringing suit for their enforcement. For these reasons the Legislature might well have provided that when the husband attempts the alienation of the homestead without the consent of the wife, the statute should not run against her as long as he lives. But in our opinion they have not done this. The court in Smith v. Uzzell, supra, say, in effect, that an exception in favor of the wife who sets up claim to the homestead merely as such can not be engrafted on the statute by the courts. Neither are we at liberty to make a special exception in a similar case, because the husband has

assumed to act in hostility to her claim. It may be appropriate for the Legislature to make such an exception. This we think they have not done hitherto, and it is our duty so to declare. It follows from what we have said that we are of opinion that the statute of limitations began to run from the time that John M. Rogers first took possession of the premises in controversy, and that the court should have so charged the jury.

The evidence further shows that very soon after the deed was signed Mrs. Hussey became acquainted with its true character, and also, as must be presumed, with the manner in which it had been signed and acknowledged by her daughter in her name. According to her own testimony she virtually conceded these facts on account of her husband's physical condition. Knowing that, as a result of her own negligence, the deed had gone forth with all the appearances of a valid conveyance, it was her duty to denounce the fraud for the protection of third parties. Not having done this, and innocent third parties having purchased upon the faith of the deed, it would seem that the transaction combines all the elements essential to the estoppel, even of a married woman. But whether or not she should be held estopped it is not necessary to decide.

The uncontroverted facts show that appellant's cause of action, if any they ever had, was barred by limitations at the time of the bringing of the suit, and therefore the judgment is affirmed.

*Affirmed.*

Opinion delivered February 17, 1888.