### TYLER BUILDING & LOAN ASSOCIATION v. BEARD & SCALES.

#### No. 2730.    Decided February 3, 1915.

**1.—Deed—Delivery—Fraud of Agent—Pleading.**

The allegations of a petition by which the owners of land sought to recover damages against their agents negotiating an exchange for other property, caused by their unauthorized delivery of the deeds placed in their hands, before plaintiffs had opportunity to examine the stock of goods to be received in exchange, delivery of the deeds being unauthorized until they had done so and approved the exchange, the goods being largely worthless and different from such as the agents had represented them to be, and rescission and recovery of the land exchanged therefor being rendered impossible by its immediate conveyance to an innocent purchaser, are held sufficient to entitle plaintiffs to recover such damages.    (Pp. 555-559.)

**2.—Deed—Delivery—Escrow.**

Placing deeds by a grantor in the hands of his agents, to be delivered only on his approval of the exchange of the land for other property negotiated by them, was not a delivery of the deeds in escrow, which must, it seems, be by placing them in the hands of another than an agent of one of the parties. (P. 560.)

**3.—Practice in the Supreme Court—Application for Writ of Error—Final Judgment.**

Under articles 1542a, 1542b, 1542c, Rev. Stats., 1911 (Act of Sept. 16, 1911, Laws, 32d Leg., First Called Session, p. 108), when the application for writ of error has been answered without reserving a right to oral argument, the Supreme Court may finally dispose of the case upon the hearing of the application.    (P. 560.)

#### ON MOTION FOR REHEARING.

**4.—Deed—Fraudulent Delivery by Agent.**

The action being against agents of plaintiff for damages from their unauthorized and fraudulent delivery of a deed placed in their hands, it was immaterial (in the opinion of Mr. Chief Justice Brown) whether or not such agents held the deed in escrow. It being alleged that rescission and recovery back of the land was impossible because of its conveyance by grantees to an innocent purchaser, the agents were liable for damages caused by their wrongful delivery of the deed in either event.    (P. 560.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Dallas County.

*Lively, Nelms & Adams* and *Lasseter & McIlwaine,* for plaintiff in error.—Appellant having alleged that it authorized appellees to go to Kansas City to exchange its lands for a general stock of dry goods; that it thereafter executed deeds conveying the land to B. W. Pope and turned same over to appellees, thereby investing appellees with the apparent authority to deliver said deeds and finally close said transaction, the appellant would be bound to third persons acting with appellees as its agents.    Mecham on Agency, secs. 702, 282, 283; Merriman v. Fulton, 29 Texas, 98; McAlpin v. Zeller, 17 Texas, 508; Railway Co. v. Hill, 63 Texas, 381; Colvin v. Blanchard, 101 Texas, 231; Donnell v. Currie & Dohoney, 131 S. W., 88; Stemper & Co. v. Keene, 152 S. W., 661; Blight v. Schench, 10 Pa. St., 285, 51 Am. Dec., 478; Mecham on Agency, sec. 474; 1 Am. & Eng. Ency. of Law, p. 1058.

*Harry P. Lawther*, for defendants in error.—Delivery of a deed is essential to the passing of the title to the land therein conveyed. Steffian v. Bank, 69 Texas, 513-518, and authorities cited; Spotts v. Whittaker, 157 S. W., 424; Boswell v. Pannell, 146 S. W., 236-239; Walker v. Irwin, 160 S. W., 166; Gatt v. Shive, 82 S. W., 303; Bunn v. Stewart, 183 Mo., 375; Houston L. & T. Co. v. Hubbard, 37 Texas Civ. App., 546; Blackman v. Schierman, 21 Texas Civ. App., 517; Koppleman v. Koppleman, 94 Texas, 44; King v. Hill, 75 S. W., 551; Gonzales v. Adoue, 56 S. W., 548; Hunt v. Butterworth, 28 Texas, 138.

To be valid, delivery of a deed to land must be with the assent of the grantor and with the intention on his part that it shall become operative as a conveyance. 1 Delvin on Deeds (2nd ed.), sec. 267; Everts v. Agnes, 4 Wis., 356, 31 Am. Rep., 369; Gould v. Wroe, 97 Cal., 532; Henry v. Carson, 96 Ind., 412-422; Healy v. Seward, 5 Wash., 319; Steel v. Miller, 40 Iowa, 402; Hutton v. Smith, 88 Iowa, 838; Stevens v. Costel, 63 Mich., 111.

A deed which comes into possession of the grantee without assent of the grantor and without his intention that the same shall operate as a conveyance is ineffectual to pass the title to the property which it purports to convey, even as against an innocent purchaser for value and without notice. Spotts v. Whittaker, 157 S. W., 424; Houston L. & T. Co. v. Hubbard, 37 Texas Civ. App., 546; King v. Hill, 75 S. W., 551; Steffian v. Bank, 59 Texas, 513-519; Everts v. Agnes, 4 Wis., 356, 31 Am. Rep., 369; Harkreader v. Clayton, 56 Miss., 383, 31 Am. Rep., 369.

Mr. Justice HAWKINS delivered the opinion of the court.

Petitioner in error, as plaintiff in the trial court, sued defendants in error, defendants there, for damages alleged to have resulted from the unauthorized, wrongful and fraudulent delivery by defendants, as plaintiff's agents, of certain deeds to some 4294 acres of land in Eastern Texas in exchange for a stock of dry goods in Kansas City, Missouri. Said petition alleges, in substance, among other things, that defendants are now, and, during the year 1909, were engaged in business in Dallas, Texas, as real estate agents and dealers; that in March, 1909, defendants represented to plaintiff, a corporation, that they were in position to make for their clients large profits on property turned over to them for trade or exchange; that at said time, and subsequent thereto, plaintiff owned and had possession of 2888 acres of land in Angelina County, Texas, same being a portion of the Vincenti Michelli grant, describing it, worth $6.50 per acre, or $18,772, and also owned and held possession of 1406 acres of land in Cherokee County, Texas, same being a portion of the M. del C. Leigo league grant, describing it, worth $6.50 per acre, or $9931, a portion of the last named tract being at the time of the negotiations mentioned in said petition in the name of the estate of Mrs. Susan W. Thorn, deceased, but in truth and in fact belonging to plaintiff; that plaintiff listed said lands with defendants on or about April 1, 1909, for disposition by sale or trade; that defendants thereafter submitted various propositions of trade for said lands, none of

which were acceptable to plaintiff; that on or about September 7, 1909, defendants represented to plaintiff that they could trade said lands to Kansas City parties at $15 per acre for a stock of general dry goods, consisting of clothing, shoes, boots, hats, dresses, etc., a stock which was first class in every respect, and which could be easily handled for cash; whereupon plaintiff advised defendants that it would be willing to trade for same, provided the stock was all right and the goods not damaged, said goods to be traded for to be submitted to inspection by plaintiff and checking up of the inventory thereof.

That about September 18, 1909, and in reliance upon the representation of defendants, made through said Baird, to the effect that he had had twenty years' experience in the dry goods business, and had examined and handled over two hundred stocks of dry goods, and was thoroughly acquainted with the character and quality of dry goods and the value thereof, and was competent to pass upon stocks of dry goods as to kind and quality and price thereof, plaintiff authorized said Baird to go to Kansas City to negotiate a deal of said lands for such a stock of general dry goods, but did not authorize him to enter negotiations to trade said lands for any other kind or character of dry goods; that shortly thereafter said Baird went to Kansas City, and from there represented to plaintiff that they had been offered for said two tracts of land $60,000 in merchandise, whereupon plaintiff believed and relied upon the representations of defendants, acting by and through said Baird, that said offered stock of merchandise was such as defendants had so represented to plaintiff it could trade said lands for, and such as that for which the plaintiff had authorized defendants to so enter into negotiations by way of exchange; that immediately after attempting to enter into a contract on behalf of plaintiff with the Mitchell Dry Goods Company for the exchange of said $60,000 stock of merchandise for said land, Baird returned to Texas, and thereafter studiously concealed the true character and quality of said stock of merchandise, but represented to plaintiff that he had traded for such a stock of general dry goods as he had represented to plaintiff he would trade for, and inventorying at cost prices the sum of $60,000, and that such sale was subject to inspection of said goods and checking said inventory by plaintiff, and very strenuously and urgently recommended to plaintiff that he accept said trade and close same immediately; that believing said statements so made by defendants to be true, and relying on their representations, plaintiff authorized defendants to proceed with closing said deal for the exchange of said goods for said lands, "said trade to be made subject to examination of the goods and checking of the inventory of same by plaintiff."

Said petition further avers "that in pursuance of said trade, as represented to it by defendants, plaintiff prepared, executed, and acknowledged, and caused to be prepared, executed, and acknowledged, deeds for the land in question, conveying same by warranty title to one B. W. Pope, the party designated by said defendants, and turned said deeds over to defendants for safe keeping, to be delivered when plaintiff had

inspected and examined said stock of goods and checked the inventory therefor," and turned said deeds over to defendants on or about October 23, 1909, down to which time, and ever since the return of said Baird from Kansas City, defendants had studiously and diligently represented to plaintiff that said stock of goods so traded for was a first class stock of general dry goods, consisting of clothing, dresses, boots, shoes, etc., and had strenuously and diligently concealed from plaintiff the true character of said stock of goods, and up to said time had failed and refused to furnish to plaintiff a copy of the contract which they had entered into on behalf of plaintiff with said Mitchell Dry Goods Company, and had also failed and refused to furnish to plaintiff an inventory of said stock of goods, and plaintiff, when it left said deeds with defendants, believed and relied upon their said representations, that it was to get the kind and character of goods above mentioned.

That on October 23, 1909, relying on defendant's representations that they had traded for said stock of general dry goods, subject to plaintiff's inspection of same and the checking of the inventory thereof, plaintiff employed an expert and experienced dry goods man to go from Texas to Kansas City and inspect said dry goods and check the inventory thereof, and he arrived there on October 25, 1909; that on October 23, 1909, plaintiff turned over its said deeds to defendants, and that on that same day defendants took the first fast train out of Dallas for Kansas City, and as soon as they could reach the office of the Mitchell Dry Goods Company after arriving in Kansas City and on the very day on which plaintiff's said expert had arrived in Kansas City, defendants, knowing that plaintiff had employed and sent said expert dry goods man to examine said stock, and knowing that he had not examined same, nor had an opportunity to do so, and in "utter and wilful disregard of plaintiff's rights, and in violation of their authority, and against plaintiff's directions and instructions, turned over and delivered said deeds to the Mitchell Dry Goods Company, without plaintiff's knowledge, consent or authority," and without plaintiff's authority to do so, employed one Ernest Lovan to act for it in accepting said stock of merchandise, he being the party who, throughout said negotiations, had represented and was at that time representing said Mitchell Dry Goods Company as its agent, which fact defendants well knew; and that immediately upon receiving said deeds, said Mitchell Dry Goods Company caused said land to be conveyed to an innocent purchaser for value, without any notice.

That the stock of goods which defendants received for plaintiff's land "was not a stock of general dry goods consisting of boots, shoes, dresses, hats, clothing, etc., such as was represented to it to be, but that the majority of said stock consisted of cheap and worthless jewelry, notions, etc.; that in said stock inventorying $60,000 there was about $30,000 worth of cheap and worthless jewelry consisting of neck chains, breastpins, collar buttons and trinkets of like kind and character, all of which were practically worthless, and $93.95 worth of ladies' waists; that in said stock there was millinery goods consisting of hats, braids, belting,

etc., amounting to over $6000, while the shoes in said stock amounted to $371; that in said stock of goods were cheap and worthless buttons inventorying over $2500 and piece goods inventorying only $165; that there was $6295.11 of ladies' neck chains and $53.17 of hosiery and underwear; that said stock did not contain the boots, shoes, clothing, hats, dresses, etc., as defendants had represented to plaintiff it did contain, but same was made up of neck chains, stick pins, broaches, breastpins, braids and trinkets of like kind and character, all of which, at the time plaintiff traded for same, or attempted to trade for same, were practically worthless; and "that plaintiff never did at any time authorize its lands to be traded for any such stock of goods, has never agreed to accept the same for its said lands, nor did it authorize or ratify defendants' attempted acceptance for it."

That "the defendants knew, or by the exercise of ordinary care and diligence could have known, that plaintiff did not trade for any such stock of goods as was tendered to it, but notwithstanding this fact defendant negligently, carelessly and fraudulently delivered plaintiff's deeds to the said Mitchell Dry Goods Company, without seeing or attempting to see that plaintiff received the goods for which said defendant agreed to exchange said land"; and that the defendants "by reason of their fraudulent acts and conduct intended to and did cheat and defraud plaintiff out of its land without paying value therefor, and in furtherance of such attempt to so defraud plaintiff, said defendants delivered plaintiff's deeds to said Mitchell Dry Goods Company, without plaintiff's knowledge, consent or authority, and that "by reason of said fraudulent acts on the part of defendants in turning over and delivering its deeds, as aforesaid, without its authority, and by reason of their negligence and carelessness in not seeing that plaintiff received the stock of goods it was to receive in exchange for said lands, they have deprived plaintiff of its land, without having compensated it therefor, which land plaintiff alleges to be worth $27,811, for which amount it asks judgment; and that plaintiff has demanded of defendants and of the said Mitchell Dry Goods Company a return of the deeds to its said land, which demand has been and is still refused."

Said petition further alleges that by reason of said wilful violation by defendants of their duty in so delivering plaintiff's deeds, so depriving it of its said lands, it has been compelled to incur and has incurred considerable expense in an effort to regain its said lands, or value therefor, in the way of traveling expenses, attorney's fees, telegrams and telephone calls, etc., to the amount of $2500, and has been compelled to employ attorneys at an expense of $1500, and pay their expenses in attending to said litigation in the sum of $500, and has paid out in other expenses, telegrams, telephone calls, hotel bills, etc., the sum of $500, aggregating the sum of $2500, and which items of expense were brought about and made necessary by defendant's utter disregard of plaintiff's rights and wilful violation of their authority; that but for defendants' acts in the premises plaintiff would not have had to expend

said amounts, and same became necessary by reason of and as a direct result of said acts of defendants.

Said petition prays for judgment against said defendants, jointly and severally, for the value of said lands in the sum of $27,911, and for its damages in the way of expenses in the sum of $2500, aggregating $30,411, together with interest thereon from October 25, 1909, and for all costs of suit, and for general and special relief. It does not allege fraud upon the part of the Mitchell Dry Goods Company.

Defendants' answer included a general demurrer and also what they denominated their "Sixth Special Exception," but which is, in effect, a general demurrer, as follows:

"Further answering, the said defendants, by their attorneys, come and say that the said plaintiff's first amended original petition is insufficient in law because it appears from the allegations therein contained that the deeds to the land which the plaintiff caused to be prepared, executed and acknowledged, conveying said land by warranty deed to one B. W. Pope were delivered to these defendants for safe keeping, to be delivered to the grantee when and not until the plaintiff had inspected and examined said stock of goods and checked the inventory therefor; that afterwards these defendants, without the consent, knowledge or authority of said plaintiff and in violation of plaintiff's authority and against their express directions and instructions and with fraudulent intent and in pursuance of a conspiracy entered into by and between these defendants and the Mitchell Dry Goods Company to rob, cheat and defraud the plaintiff out of its lands, delivered said plaintiff's deeds to the said Mitchell Dry Goods Company."

The District Court sustained said demurrers and from that judgment plaintiff appealed to the Court of Civil Appeals for the Fifth Supreme Judicial District, which affirmed said judgment. 165 S. W., 542. The case is before us upon the application of the association for a writ of error.

We are of the opinion that said petition states a cause of action, and that each of said demurrers should have been overruled. Their effect is to admit the truth of the allegations of said petition.

Plaintiff's petition alleges, among other things, in substance, that defendants were plaintiff's agents; that defendants delivered said deeds to the dry goods company, in exchange for inferior goods, of less than stipulated value, and without plaintiff's knowledge, consent or authority, and in direct violation of its instructions, and in pursuance of a systematic design and scheme of defendants to rob, cheat and defraud plaintiff and deprive it of the value of its said lands; and practically confirms said trade while seeking to hold defendants personally liable for damages alleged to have resulted from such unauthorized and fraudulent surrender of its said deeds.

Under those allegations, by which, alone, the merits of said demurrers can be determined, defendants are estopped to deny that titles to said lands passed upon their surrender or delivery of said deeds to the Dry

Goods Company, and, therefore, are liable to plaintiff for proximate resulting damages.

Consequently, issues as to whether the minds of the contracting parties met upon the terms and conditions of the trade; whether the trade was consummated; whether said deeds to the dry goods company, while in the hands of defendants, were *in escrow;* whether those deeds were "delivered" in contemplation of law and in such manner and under such circumstances as to make them effective to pass titles to the dry goods company; and whether title to said lands passed by subsequent deed of the dry goods company to said innocent purchaser for value, are alike irrelevant and immaterial in this cause.

However, we deem it proper to say that we do not concur in the conclusion of the Court of Civil Appeals to the effect that said deeds to the Mitchell Dry Goods Company were *in escrow* while in the hands of defendants as plaintiff's agents.

Because of the errors indicated said application for a writ of error is granted.

No. 5 of our "Rules for the Supreme Court," which is based on Revised Statutes, 1911, articles 1542a, 1542b and 1542c (General Laws, 1911, 1 S. S., chap. 20, p. 108), provides:

"The defendant in error shall have ten days from the date of the filing of the application in the Supreme Court to file an answer thereto which must be confined to a reply to the grounds of error presented by the plaintiff in error and to such matter as may be pertinent to show to the court that the plaintiff in error is not entitled to the writ, and in support of the correctness of the judgment of the court below. If the defendant in error shall file such answer and the Supreme Court shall conclude that the writ of error should be granted, it may in its discretion proceed to finally dispose of the case; provided, the defendant in error may in his answer expressly reserve the right to be heard in open court, in which event the case will stand for submission in regular course. If such right be not expressly reserved by the defendant in error in his answer, and the court shall deem it proper to finally dispose of the case upon hearing the application, it shall write such opinion as it may think proper and shall in open court pronounce the judgment of the case and enter the same of record as in other cases."

Availing themselves of a privilege thus conferred defendants in error have filed an answer to the application for a writ of error without expressly reserving therein the right to be further heard in open court, so we proceed at once to a disposition of this appeal.

Said judgment of the Court of Civil Appeals and of the District Court are reversed, and this cause is remanded to said trial court.

Opinion delivered December 23, 1914.

(Associate Justice Phillips, being disqualified, did not participate in the decision.)

### ON MOTION FOR REHEARING.

MR. CHIEF JUSTICE BROWN delivered the following opinion concurring in the overruling of the motion:

I concur in the action of this court in overruling the motion for rehearing in this case upon the following grounds:

The petition in this case shows that the defendants in error were employed as agents to sell the land of plaintiffs, and as such reported a sale or a prospect of a sale. The deed was executed and delivered to them to be delivered to the purchaser upon the completion of the transaction. There was no agreement between the proposed vendee and the vendors that a deed should be deposited with any person for future delivery. Therefore the deed was not in escrow; it had none of the elements or characteristics of such an instrument.

There must be an agreement between the parties upon the depositary and the terms upon which the delivery shall be made. It can not be deposited with one of the parties, nor with his agent. 16 Cyc., pp. 571, 573; Miller v. Sears, 91 Cal., 282, 25 Am. St. Rep., 176, 27 Pac., 589.

In fact, it is immaterial whether the deed was in escrow or whether it was a deed delivered to the agent without any concurrent agreement on the part of the vendee, and to be by the agent delivered at its own discretion upon the completion of the transaction between him and the proposed vendee.

If it was a deed which the owner of the land executed and delivered to his agent to be delivered to the vendee upon the performance of the agreement between them, and the agent delivered it fraudulently, as alleged in the petition, still, when the land had been sold to an innocent purchaser, as it was in this case, and as alleged in the petition, the purchase was for valuable consideration without notice, title would pass notwithstanding the fraud. If the deed had been strictly in escrow, deposited with the parties by agreement, and the depositary had delivered it by a fraudulent agreement between himself and the vendees in the deed, the innocent purchaser for value and without notice of any such conditions would take the title free from the claim of the vendor. 16 Cyc., 582, note 34.

I have not thought it necessary to enter into a discussion of what constitutes an escrow, or the difference between that and a deed. The case as here presented and the ground upon which the demurrer was sustained is the real point to be decided; that is, the deed, whether escrow or not, being placed in the hands of the agents, and having been fraudulently delivered to the vendee, who sold the same to innocent parties for valuable consideration and without notice, the title passed, and the plaintiffs in error could not have recovered the land from the innocent parties, if the petition alleges the truth of the transaction.

If the agent to deliver a deed or a depositary who has been entrusted with an escrow, in fraud of the right of the maker of the deed, delivers the same to the vendee who conveys the land to an innocent purchaser,

such agent or depositary is responsible to his principal for the damages thus occasioned.   It would be monstrous to say that one entrusted with property may fraudulently dispose of it and acquit himself of liability by casting upon the principal the burden of recovering the property from the fraudulent vendee.

It follows, therefore, that I conclude that the allegations of the petition show a right of action against the defendants in error in this case.

The motion is overruled.

Mr. Justice Phillips not sitting.

Delivered February 3, 1915.