**COVERT v. CALVERT et al. (No. 2708.)**

(Court of Civil Appeals of Texas. Amarillo. June 30, 1926. Rehearing Denied Oct. 6, 1926.)

**1. Acknowledgment ⬤⟳5—Evidence ⬤⟳370(5) —Unacknowledged contract of sale, not basis of any cause of action nor set out in pleading and signed by one whose authority was not shown, held inadmissible (Rev. St. 1925, art. 3734).**

Contract purporting to bind defendant to convey to intervening claimant of land attached, but signed by one whose authority was not shown and not acknowledged under statute or basis of any cause of action or set out in any of pleadings, held not admissible against plaintiff, under Rev. St. 1925, art. 3734.

**2. Evidence ⬤⟳370(1).**

Generally private writings must be proved as genuine before they are admissible, especially when offered against one not a party thereto.

**3. Brokers ⬤⟳103.**

Vendor's execution of deed without knowledge of contract of sale negotiated by broker held not to constitute a ratification.

**4. Escrows ⬤⟳1.**

Valid contract of sale is necessary to render deposit of deed in pursuance thereof a genuine escrow.

**5. Escrows ⬤⟳1.**

To constitute valid "escrow," seller and buyer must actually contract, and deposit of instrument in pursuance of such contract must be absolute and beyond control of depositor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Escrow.]

**6. Attachment ⬤⟳180—Where deed was held by bank to be delivered on compliance with vendor's terms, lien of attachment writ duly levied and recorded before deed was delivered by bank held to attach.**

Where deed was not deposited by vendor with bank in escrow, but was simply being held by bank to be delivered upon compliance with vendor's terms, attachment writ, duly levied and recorded before deed was delivered, held

---

to create a lien superior to any right acquired by grantee.

**7. Brokers ⊚⇒55(3).**

Where owner, while broker's exclusive listing contract was still in force, sold through another agent, first broker's right to commissions was not affected.

**8. Attachment ⊚⇒211.**

Plaintiff need not either plead or prove attachment proceedings to entitle him to foreclosure of attachment lien.

**9. Attachment ⊚⇒211—Allegations of service on nonresident defendant and attachment proceedings held to show that court acquired jurisdiction and in proceeding in rem could foreclose attachment lien.**

Allegations that plaintiff was resident of state, that notice to serve nonresident defendant was issued and served on defendant, taken in connection with attachment proceedings, *held* to show that court acquired jurisdiction, and in proceeding in rem could foreclose attachment lien.

**10. Evidence ⊚⇒43(2).**

Court, in action in which property is attached, must take judicial notice of attachment proceedings.

Appeal from District Court, Hale County; R. C. Joiner, Judge.

Action by C. C. Covert against M. E. Fosher, in which Mrs. S. N. Calvert intervened and interpleaded J. S. Haydon. From the judgment, plaintiff appeals. Reversed and rendered.

Oxford & Oxford, of Plainview, for appellant.

M. J. Baird, of Plainview, for appellees.

HALL, C. J. The appellant, Covert, filed this suit, alleging, in substance, that he was a real estate broker; that M. E. Fosher represented to him that he (Fosher) was the owner of the east half of section 20, block 2, Halsell subdivision of Lamb and Castro counties, most of which land was in Lamb county; that Fosher listed said land with Covert for sale at the price of $10 net per acre to Fosher, contracting that Covert should have the exclusive right to sell said land, and that plaintiff should have all over $10 per acre as his compensation for making the sale; that plaintiff was authorized to sell the land for all cash, or $500 to $800 of the purchase price in cash, with the balance payable in 6 and 12 months from date, the purchaser to assume certain indebtedness then existing against the land. Plaintiff further alleged that he found a purchaser who was ready, willing, and able to buy the property and pay the purchase price in cash therefor at the rate of $12.50 per acre, that he notified Fosher of these facts, and that Fosher refused to execute a deed and consummate the sale, to plaintiff's damage in the sum of $800.

The suit was filed November 13, 1924, and plaintiff sued out an attachment the same day, which was levied upon the land in question.

Fosher was a nonresident of the state and filed no answer, although he was duly served with the proper notice to serve nonresident defendant as required by law.

Mrs. S. N. Calvert intervened in the action and interpleaded J. S. Haydon, alleging that she had purchased the land from Haydon, who executed and delivered to her a warranty deed, and she claimed protection upon the warranty of title therein. She filed a cross-action against Covert for damages, which was abandoned at the trial.

Haydon waived service of citation and answered, adopting the answer of the intervener, alleging that he had purchased the land, which had been attached by Covert prior to the levy of the writ, and that his title was superior to Covert's attachment lien. He set out the deed from Fosher to him in his answer, which disclosed that the conveyance was made about the 27th day of October, 1924, and filed for record November 27, 1924.

The case was tried to the court without a jury, and resulted in a judgment in favor of Haydon and Mrs. Calvert, and that Covert take nothing by his suit against Fosher.

The record discloses that Fosher, who was a nonresident, conveyed the land to Haydon prior to the levy of the writ of attachment. He sent the deed to the First National Bank of Plainview, with a letter instructing the bank to deliver the deed upon the payment of a certain amount of money. The bank held the deed until the 25th day of November, when the purchase money was paid by the grantee, and the bank then delivered the deed. While the deed was still in possession of the bank, and about 10 days before the transaction was closed, the writ of attachment was levied. A contract of sale was admitted in evidence during the trial with the name of J. S. Haydon, the proposed purchaser, signed to it, which was also signed: "M. E. Fosher, by J. E. McInnish, Agent." The appellant objected to the introduction in evidence of this instrument, upon the ground that it had never been shown that J. E. McInnish had any authority to act for Fosher in signing the contract. The bill of exceptions taken to the introduction of this evidence, and approved by the trial judge, recites that there was no testimony showing that McInnish had any authority from Fosher to sign the latter's name to the instrument, and there was no proof that Fosher knew that any such contract had been executed. This action of the court is assailed by appellant's first proposition.

[1, 2] The contract purports to be between Fosher, as seller, and Haydon, as purchaser of the property, binding Fosher to convey to-

Haydon the property upon certain terms and conditions mentioned therein, and recites that all obligations thereunder are performable at the First National Bank of Plainview, Tex. The contract was not acknowledged under the statute, was not the basis of any cause of action, nor is it set out in any pleading filed in the case. It was not admissible against Covert under the provisions of R. S. art. 3734. No proof was offered to show that it was actually signed by either Haydon, McInnish, or Fosher. The general rule is that private writings must be proved as genuine before they are admissible in evidence: especially is this true when offered · against one not a party to it. Stroud v. Springfield, 28 Tex. 649; Becker v. Bowen (Tex. Civ. App.) 79 S. W. 45; Lignoski v. Crooker, 86 Tex. 324, 24 S. W. 278, 788; First National Bank & Trust Co. v. Southwestern Engineering & Construction Co. (Tex. Civ. App.) 170 S. W. 861; Floresville Oil & Mfg. Co. v. Texas Refining Co., 55 Tex. Civ. App. 78, 118 S. W. 194; Needham v. Cooney (Tex. Civ. App.) 173 S. W. 979.

The question presented by this proposition does not concern the agency of McInnish to sell the land as the representative of Fosher, but goes to the admissibility of an unauthenticated private writing against a stranger to it, when such instrument is not the basis of any suit or pleading filed in the case. We think the court erred in admitting it in evidence.

The second insistence by the appellant is that, where a deed is executed by a grantor, who sends it to a bank to be held by it until a certain sum of money is received by the bank, there is no escrow, but the bank is merely acting as the agent of the grantor, that there was no delivery of the deed and the title does not pass until the grantee pays the consideration named in the deed, and therefore, an attachment levied upon the property while the deed is in this condition creates a lien superior to any right acquired by the grantee, provided the attachment is filed for record with the county clerk.

The record does not show that the deed was held by the bank in escrow. On October 27, 1924, Fosher wrote the bank a letter, inclosing the deed, which he instructed the bank to deliver to Haydon upon payment of $2,050, and to remit the proceeds, after the deal was closed and the agent's commissions paid to him. The record discloses that the bank was simply Fosher's agent to deliver the deed and collect and remit the money to him as principal. Since the contract which the court erroneously admitted should have been excluded, there is no other testimony in the case to support the trial judge's finding that the deed was in escrow. The deed had not passed from Fosher's control. Fosher wrote Covert on November 12th that in dealing with McInnish he thought he was dealing with Covert as well; that he had sent the deed and instructed the bank in the matter, "so thought the better way was to write the bank, and if they have not gone too far in the matter they were to return deed and abstract. If the deal is closed, I don't see any way to change it."

The assistant cashier of the bank testified that in closing the deal he acted under the instructions contained in Fosher's letter.

[3-5] These facts conclusively show that the deed was not deposited by Fosher with the bank in escrow, but was simply being held by the bank to be delivered upon compliance with the terms of Fosher's letter. Fosher · sent the deed under the mistaken impression that McInnish was acting with Covert in making the sale. Fosher knew nothing of the contract which McInnish and Haydon had executed, and there is nothing in the record to show that he ever ratified it. The execution of the deed without knowledge of the contract does not constitute ratification. The authorities hold that a valid contract of sale is necessary to render the deposit of a deed in pursuance of same a genuine escrow. Simpson v. Green (Tex. Com. App.) 231 S. W. 375. The rule is that the seller and the buyer must actually contract, and the deposit of the instrument in pursuance of such contract must be absolute and beyond the control of the depositor. 21 C. J. 866; Id. 870; Tyler Building, etc., Association v. Beard, 106 Tex. 554, 171 S. W. 1122, 1200; Blue v. Conner (Tex. Civ. App.) 219 S. W. 533.

[6, 7] The record shows that the attachment writ had been duly levied and recorded before the deed was delivered by the bank, and, since the deed was not in escrow, the lien of the writ had attached. The court found as a fact that the land was listed by Fosher with Covert under an exclusive contract from August 1, 1924, to September 1, 1924, and that this exclusive listing was never changed in any way. In the original opinion we construed this finding to mean that the time of the exclusive listing had expired on September 1st. Upon a careful review of the record, we are convinced that we were in error in so holding. Evidence from both parties is practically conclusive that Fosher contemplated that the exclusive listing was still in effect when the deed was executed and sent to the bank, and his correspondence shows that he executed and sent the deed with that understanding; his sale, therefore, through another agent, was in violation of his exclusive listing contract with Covert, and does not effect the latter's right to recover. The original opinion is therefore withdrawn.

[8] The judgment seems to have been rendered upon the theory that the deed was in escrow at the time the attachment was levied. From the recitals in the judgment and the findings by the court, it appears that the trial judge proceeded in rendering a judgment upon the idea that, because the affidavit and bond for attachment were not introduced

in evidence, the right to the lien was not shown. The rule is established in such cases that it is not necessary for the plaintiff to either plead or prove the attachment proceedings in order to entitle him to a foreclosure of the attachment lien, and that the court takes judicial notice of the proceedings as part of the record in the case. Newsom v. Couch (Tex. Civ. App.) 262 S. W. 155; Johnson v. Goolsby Lumber Co (Tex. Civ. App.) 121 S. W. 883.

[9, 10] The record further shows that Covert was a resident citizen of Texas; that a notice to serve nonresident defendant was issued and served upon Fosher. These allegations, taken in connection with the attachment proceedings, of which the court must take judicial notice, are sufficient to show that the court acquired jurisdiction, and in a proceeding in rem could foreclose the attachment lien. Both parties pleaded the fact of the attachment, and no effort was made by the defendants, or either of them, to quash the proceedings. The land was not paid for by Haydon, nor was the deed delivered until after the writ of attachment had been levied and recorded. Haydon and McInnish both knew that the land had been listed with Covert, and Mrs. Calvert had notice of the attachment lien, at least constructively. The lien created by the levy and proper registration thereof prevented the deed, which was not in escrow, from relating back to the date of its execution so as to effectively convey title.

For the reasons stated, the judgment is reversed, and is here rendered for the appellant.