**BUSBY et al. v. SMITH et al.**
**No. 4199.**

Court of Civil Appeals of Texas. Texarkana.
July 12, 1932.

Rehearing Denied Sept. 8, 1932.

Carrigan, King & Surles, of Longview, for appellants.

Ernest Goens and R. E. Allday, both of Tyler, for appellees.

LEVY, J. (after stating the case as above).

There is presented for decision the effect on the title or interest in the property of the delivery in the particular circumstances of the case to the appellant R. H. Busby of the mineral deed from W. F. Smith and wife. The point may not be considered as involving an unauthorized delivery of the deed by an escrow holder but the passing of the instrument to the vendee by the agent of the vendors without authority or by wrongful procurement. The agreement of the parties was, as found by the trial court, in express terms to place the mineral deed upon its execution by W. F. Smith and wife to R. H. Busby in the Everett Bank at Gladewater with the future delivery and the payment of the purchase price to depend upon the acceptance or rejection by R. H. Busby of the title to the property within ten days after he had been furnished with the abstract of title. The object of the parties to create an escrow was never in fact accomplished for there was no delivery of the mineral deed ever made to the depositary bank. It was essential to an escrow that there be a delivery of the deed to the named depositary, and there can be no escrow without the delivery. 17 Tex. Jur. p. 94; 10 R. C. L. § 7, p. 625; 21 C. J. p. 870. The delivery was actually made, as appears, direct to the purchaser himself by the deputy district clerk on the same day that the deed was especially placed in his hands for the purpose of delivery to the depositary bank. Plainly enough, when the deputy district clerk received the mineral deed with the instruction from the vendor to place it with the Everett Bank in escrow, and the mineral deed was left with him for that purpose, there was no intention that this should constitute a delivery to him. It is the long-recognized rule that there must be delivery, to become effective as between the parties to the instrument, and this does not happen when such is not the intention of either party. The passing, then, of the instrument by the agent of the vendors, as the deputy district clerk must be regarded, to the vendee without authority or by wrongful procurement, such delivery in legal effect would not be that complete delivery of the mineral deed sufficient as between the parties to pass title or interest to the oil estate. 1 Devlin on Real Estate (3d Ed.) § 260; 18 C. J. §§ 94–104, p. 196; 8 R. C. L. § 45, p. 973; 14 Tex. Jur. § 59, p. 821. And an ineffectual delivery is made manifest by the further fact that the purchaser had knowledge, as must be inferred from the supplemental terms of agreement made, that the delivery to the deputy district clerk was not with the assent of the vendors that the mineral deed should presently become operative and effectual. As between the purchaser and the vendors, there is no trouble in determining, in the circumstances stated, that there was not a delivery by consent or intention of the parties at the time of the passing of the instrument. But, while delivery is essential to render the deed effectual in law, it is in fact the performance of the conditions that imparts validity, and for this reason the title may be regarded as vesting in the purchaser whenever this has been done. In order, then, for the purchaser to predicate the right to have the unauthorized delivery of the mineral deed declared sufficient to pass title or interest to him to the estate in the oil, it must, under conceded rules of law, appear that there was either ratification by the vendors of the unauthorized act of the agent or the subsequent timely performance of all the requirements imposed in the agreement for a sale.

Looking to the agreement, it appears, first, that the vendors were to furnish or exhibit an abstract of their title. In the agreement was no express stipulation relative to the character of title to be conveyed in case of sale, but this situation could occasion no controversy because an agreement to furnish or make a marketable or "good" title would be implied. In the absence of any stipulation to the contrary, a marketable or good title is presumed to be given. 3 Devlin on Real Estate (3d Ed.) § 1490; 27 R. C. L. p. 368; 57 A. L. R. 1268. And, moreover, the vendor here testified that he intended to furnish or make "a good title" in case of sale. It seem-

ingly appears, too, that a good and sufficient abstract was furnished, as the abstract as exhibited included all the instruments of conveyance, together with the statement of the lien to which the land was subject, and no objections were made to the abstract as not being full and explicit. The attorneys for the purchaser pronounced the title as exhibited to be a valid title and charged only with the outstanding unsatisfied mortgage of the insurance company. Upon the disclosure made to the purchaser of the title and the defect, his duty arose, in order to relieve him of the effect of default, to give notice of his intention to buy or refuse to buy the estate, to enable the vendor to cure the defect by the date set for closing the transaction. The agreement for a sale indicates that, under the exigencies of the occasion, which was the sale of an oil estate, time for the completion and closing of the transaction was the essence of the agreement. By the terms of the agreement, as found by the court, the purchaser in effect was allowed "ten days from the receipt of the abstract of title," not only as sufficient time to examine the character of the title he was purchasing, but as the limit of time to either "accept or reject the title to the property." The intention of the parties, as a matter of fair construction, was apparently to give to the purchaser the right or privilege to purchase or refuse to purchase at his election after examining and being informed of the character of title. The desire of the purchaser to accept the title and to close the transaction was necessary to be given to the grantor within the fixed time of "ten days." If the purchaser had done so, then the duty would have devolved upon the vendor to have cured the defect so as to be able to tender a good or merchantable title. The privilege to give notice of the desire to refuse or to accept and close the transaction within "ten days" did not itself constitute an executory contract for the sale of the oil estate; this latter only arose after the election had been duly exercised.

In this case doubt in point of fact arises as to whether or not the purchaser may be said to have made timely objection to the mortgage lien and acceptance of the title because the evidence in that respect is conflicting. The purchaser testified, and the vendor denied the statement, that he promptly and timely within ten days after the opinion of his attorneys requested the vendor to have the mortgage lien released so as to cure the defect and make good the title. There is no affirmative finding by the court, but there is necessarily implied from the decree the finding that the purchaser made no timely demand for the release of the lien or acceptance or for performance of the agreement for a sale. The opinion of the attorneys was promptly and fully given to the purchaser the next day after the delivery of the abstract. The

tender of payment was made by the purchaser on March 25, 1931. At that date the time was overrun, and it was too late. It is believed that it may not be said in the special circumstances that the purchaser timely availed himself of the privilege to complete the purchase of the oil estate, and to invoke performance of the agreement for a sale. The default within the specific time fixed for performance gave the right to the vendor to forfeit the agreement for a sale. It is believed express ratification or ratification by estoppel in pais cannot be predicated in the circumstances. It was not so conclusively shown as to warrant disturbing the finding of the trial court in that respect as must be deemed he made in the light of the decree. By affirmative finding of fact by the court, the vendors actually and seasonably renounced or forfeited the agreement for sale because of the default of the purchaser. He attempted to file for record on March 7, 1931, a verified declaration of his renouncement for sale, as a means of public notice in fact of his intention and act. In the situation shown it is believed Mr. Busby may not predicate the right to title or interest in the estate or to performance of an executory contract for sale. And, because Mr. Busby acquired no title, he could pass no absolute title or interest to his respective subvendees.

As respects the subvendees of R. H. Busby, the vital question is, and their rights would depend entirely upon, whether or not they may invoke the protection given by the equitable doctrine of bona fide purchase. The court determined, as a matter of law, that the subvendees "can not be innocent purchasers of (under) their mineral deeds." By the third and eighth assignments of errors, the appellants bring in review that conclusion claiming that, as the mineral deed had been delivered over to Mr. Busby by the deputy clerk, the agent of both Mr. and Mrs. Smith, the subvendees were entitled to be protected as innocent purchasers. It is urged that the case of Tyler Building & Loan Association v. Beard & Scales, 106 Tex. 554, 171 S. W. 1122, 1200, was applicable, and the court should have rendered judgment for them. The appellees claim to the contrary, and further urge, first, that the appellants cannot invoke the doctrine because they have not pleaded estoppel, and, next, that the ruling in the case especially of Cardwell v. Shifflet (Tex. Com. App.) 294 S. W. 519, has application and controls the situation, and the court correctly so concluded and rendered judgment in their favor.

■ The subvendees affirmatively pleaded that they purchased an interest in the oil estate from R. H. Busby in good faith and for a valuable consideration and upon the apparently valid title of a mineral deed executed to him by W. F. Smith and wife and without any notice of fact or circumstance

rendering such deed invalid. In such allegations there is sufficiency of pleading of all the factual elements constituting bona fide purchase, having the effect of an estoppel, and, it is concluded, available in this case as an affirmative plea of estoppel. 49 C. J. § 85, p. 87. The doctrine of bona fide purchase is upon the principle that, when the original legal owner has done or omitted something by which it was made possible that his property should come into the hands of a bona fide holder by an apparently valid title, it is just to regard him as estopped from asserting his ownership, and thus to protect the subsequent purchaser. 2 Pomeroy, Eq. Jur. (4th Ed.) § 736, p. 1500. The case of McMahan & Co. v. State Nat. Bank (Tex. Civ. App.) 160 S.W. 403, is not understood to have decided that a plea of bona fide purchase, as full as here set out, would not be sufficient as a plea of estoppel. In that case J. C. Liddell, Jr., obtained the bills of lading and compress receipts by wrongful procurement from the bank and sold the cotton to McMahan & Co. McMahan & Co. set up that they bought the cotton in good faith and paid full value therefor and without knowledge of the wrongful procurement of the bills of lading and compress receipts. McMahan & Co., though, did not go further and allege any negligence of the bank in trusting the bills of lading and compress receipts to the custody of J. C. Liddell, Jr., as an answer to the plea of the bank claiming that J. C. Liddell, Jr., was the tortious possessor of the cotton and not their agent. In such situation the court held that the appellants invoked the plea of bona fide purchase, but did not also invoke estoppel of the bank to assert or deny agency of J. C. Liddell, Jr., or "his right to sell." There was no contention there that the two pleas were not separate and distinct pleas. 2 C. J. § 68. p. 460.

▋ It is believed that the case of Cardwell v. Shifflet (Tex. Com. App.) 294 S. W. 519, may not be regarded, as claimed by appellees, as ruling the situation here shown. There is distinguishment between the present case and the case of Cardwell v. Shifflet, supra. The Cardwell Case was not in the same situation as the present one as respects the factual element of the delivery of the deed by the intrusted custodian of the deed. There the notary public, whom the grantors made the custodian of the deed, never delivered over the deed to the grantor's daughter, although he had it registered, and, so far as the reported case shows, never surrendered possession of it to any one in violation of his trust. The "registration" of the deed was an act in excess of authority and "never authorized," and the authorized act of holding and not delivering over the deed to the grantee was not violated. In this situation the holding of the court was, in substance, that the

principle of equity would not sustain nor warrant the claim of a bona fide purchaser. Evidently so because the original legal owner was himself wholly innocent of any act producing injurious effect to the subsequent subvendee, done either by himself or for which responsibility of a principal for the acts of his agent would legally rest. Therefore the case rested, in determining which of the two holders of title was the least at fault, entirely upon the single point of whether actual possession would sufficiently impart notice of the rights of the original holder against the unauthorized act of registration. The original holder continued in actual possession of the land. In that respect the court distinguished the case from that of Eylar v. Eylar, 60 Tex. 315, in the statement reading, "In that case a deed of conveyance valid upon its face was actually executed and delivered by the party in possession." The ruling in that case is consistent and not conflicting with the case, as relied on by appellants, of Tyler Building & Loan Association v. Beard & Scales, 106 Tex. 554, 171 S. W. 1122, 1200. In that case the general principle laid down was plainly that, where a deed is placed in the hands of an agent of the grantor, as the deputy clerk here must be held to be, to be delivered only on the performance by the grantee of some condition and a delivery has been made to the grantee without authority or by procurement, the purchaser from the grantee in good faith and for value and without notice will be protected upon the familiar doctrine that, as between two parties, both of whom have been wronged, the one least at fault will be protected. The protection there given to the bona fide purchaser simply means that from the relations subsisting between the two parties, especially that which is involved in the innocent position of the purchaser, the original legal owner cannot be aided in what he is seeking to obtain, because it would be inequitable to do so. The rule so stated in that case means, and as so indicated in Boswell v. Pannell, 107 Tex. 433, 180 S. W. 593, that subvendees are protected in their holding of title or interest by estoppel and only by estoppel of the grantee to deny the validity of the conveyance. Link v. Page, 72 Tex. 592, 10 S. W. 699; Steffian v. Milmo Nat. Bank, 69 Tex. 513, 6 S. W. 823; Hussey v. Moser, 70 Tex. 42, 7 S. W. 606; Spotts v. Whitaker (Tex. Civ. App.) 157 S. W. 422. It is a principle well established that, where one of two persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it. 21 C. J. § 176, p. 1170. Therefore it may not be said as a matter of law that the actual occupancy by Mr. and Mrs. Smith of the surface estate of the land sufficiently imparted notice, and thereby prevented the claim of bona fide purchase of their rights against the unauthorized delivery of the mineral deed. There was a misdelivery of the

mineral deed by the deputy clerk, the intrusted custodian of the same. Both Mr. and Mrs. Smith knew and assented to the delivery in the first instance of the mineral deed to the deputy clerk for the special purpose of delivering it to the Everett Bank, and his holding of the deed was in trust for her as well as for her husband. Guaranty Bond State Bank of Mt. Pleasant v. Kelley (Tex. Com. App.) 13 S. W.(2d) 69. The case of Eylar v. Eylar, 60 Tex. 315, would in this respect be applicable. And it is believed the factual element of misdelivery of the mineral deed by the deputy clerk, the intrusted custodian of the same, would go to make especially applicable the rule applied in the case of Tyler Building & Loan Association v. Beard & Scales, in the event the subvendees had no actual notice or knowledge of or about the transaction. The subvendees testified that they knew nothing about the misdelivery of the deed or about any agreement between the Smiths and R. H. Busby before or at the time of their purchase. They were shown the deed by Mr. Busby, and each paid him the agreed purchase price, relying on the face of the deed and Mr. Busby's possession of it. They were not in the vicinity of the land or in a position to know of the transaction. The subvendees lived, one in Archer county and the other at Mineral Wells. The statement of Mr. Busby, quoted above, respecting his purpose in going to the oil field, would not of itself and alone show a joint enterprise or partnership of the parties. There appearing no circumstances even tending to impair or reflect upon the evidence of the subvendees, it is therefore concluded that under the law and the evidence a judgment in their favor was warranted under their plea of bona fide purchase. This ruling, though, does not dispose of the appeal in view of the further conclusion that the mineral deed was void for insufficiency of description of the land. And this ruling should not be regarded as prejudicing the case upon another trial, should the evidence then offered present a different situation.

■■■■■ The appellants urge as errors the conclusion of the court that the mineral deed was void for insufficiency of description of the land and in sustaining the objection and ruling out as evidence the lease to H. F. Worley and the deed from the Republic Insurance Company to W. F. Smith offered in aid of the description and to identify the land. The mineral deed conveys "an undivided one-fourth interest in and to all the oil, gas and other minerals in and under and that may be produced from the following described land situated in Upshur County, Texas." The deed then gives the description of the land as "100 acres out of Blocks 8 and 9 of the sub-division of Jose Maria Pineda Survey, which was patented to Adolphur Stern, Pat. 608, Vol. 2, three miles North of Gladewater, Texas." Following the above description of the land

appears, namely, "And said above described lands being now under an oil and gas lease originally executed in favor of W. M. Worley and now being held by W. M. Worley. It is agreed that this sale is made subject to said lease, but covers and includes one-fourth of all the royalty and gas rental and royalty due and to be paid under the terms of said lease, in so far as it covers the above described property." The appellants offered in evidence, as stated in the bill of exception, "an oil and gas lease executed by W. F. Smith and wife to H. F. Worley, dated and registered prior to the mineral deed to R. H. Busby, and recorded in Vol. 9, page 555 of the Oil and Gas Lease Records of Upshur County, Texas, and which lease described the 100 acres owned by W. F. Smith by referring to the deed from Republic Insurance Company to W. F. Smith of date December 24, 1930, and recorded in Vol. 75, page 223, of the Deed Records of Gregg County, Texas." As further stated in the bill of exception, "said defendants in connection with the said lease also offered in evidence the certified copy of the deed from the Republic Insurance Company to W. F. Smith dated December 24, 1930, and recorded in Vol. 75, page 223, of the Deed Records of Gregg County, Texas, which said deed correctly described the 100 acres belonging to W. F. Smith." The appellees objected to the introduction of these instruments "because the lease so offered was to H. F. Worley and not to W. M. Worley as stated in the mineral deed to R. H. Busby from W. F. Smith and wife, dated February 11, 1931." It is believed the court correctly excluded the oil lease to H. F. Worley. The oil lease was, as stated in the bill of exception, "executed by W. F. Smith and wife to H. F. Worley." The evidence does not identify such oil lease as the document the deed referred to. The document of reference in the deed was to a lease "executed in favor of W. M. Worley." No such document was shown to have existed. The extent of the oral evidence was as testified by W. F. Smith: "Prior to this time (the date of the present deed) I had leased the land to a man named Worley —I don't mean Worley, either—I leased to a man named Jordan, and he turned it over (leased) to Worley. I sold the lease to a fellow named Jordan. I don't recollect the date of it now."

The deed was in the circumstances inadmissible in evidence. Stier v. Latreyte (Tex. Civ. App.) 50 S. W. 589. The description data of the deed cannot be varied or contradicted by parol evidence. 14 Tex. Jur. §§ 204, 251, pp. 992 and 1045. As respects the deed from the Republic Insurance Company, however, quite a different and distinct point is involved. It does not appear that the deed was offered in evidence upon the ground only that it was a document called for or referred to in the mineral deed or the lease to H. F. Worley or W. M. Worley. The objection made to it at the

time was met by the explanation that W. F. Smith "also testified that he owned no other land in the county (besides the 100 acres) except an interest in his father's estate." The purpose of offering the deed was evidently, not to contradict the mineral deed, but the more clearly to locate and identify the land conveyed by the mineral deed. It was shown that the deed offered in evidence was the deed from the insurance company to W. F. Smith conveying to him in the first instance the 100 acres of land, and that it "correctly described the 100 acres belonging to W. F. Smith." W. F. Smith testified that he lived "on the 100 acres of land" intended to be conveyed to R. H. Busby, and that it "was described as out of Blocks 8 and 9 of the Sub-division of the Jose Maria Pineda Survey," and that he owned "no other land in the County" and "had no other land in the Pineda Survey." That extrinsic evidence may be introduced in order to identify the land by the description given in the deed is not open to question in this state, where the description in the deed is not inherently uncertain. Smith v. Crosby, 86 Tex. 15, 23 S. W. 10, 40 Am. St. Rep. 818; Giddings v. Day, 84 Tex. 605, 608, 19 S. W. 682; 14 Tex. Jur. §§ 220, 250, p. 1011; 3 Jones on Evidence, § 450. It thus appeared that the land intended to be conveyed could in fact be reasonably ascertained and identified from the whole description in the mineral deed.

The mineral deed from W. F. Smith and wife was not inherently uncertain. It stated the definite facts in relation to the land, of the number of acres, the county of location, the survey, the block in the subdivision of the survey, and the name of the original patentee. The deed therefore was not utterly devoid of any matter of identity whatever, and devoid of any reference from which the specific 100 acres intended to be conveyed can be identified and more clearly located. A deed is sufficient, so far as certainty of description is concerned, if it states the county, the number of acres, and the survey. Miner v. Paris Exch. Bank, 53 Tex. 559; Arnall v. Newcomb, 29 Tex. Civ. App. 521, 69 S. W. 92; Perry v. Stevens, 44 Tex. Civ. App. 108, 97 S. W. 1075. The deed, it is concluded, was sufficiently certain. Gresham v. Chambers, 80 Tex. 544, 16 S. W. 326; Smith v. Westall, 76 Tex. 509, 13 S. W. 540; Linnartz v. McCulloch (Tex. Civ. App.) 27 S. W. 279.

The point is therefore sustained, and the judgment is accordingly reversed and the cause remanded for another trial.

On Rehearing.

It is believed, upon a reconsideration of the evidence, that, as before held, the mineral deed from W. F. Smith and wife was not utterly void for lack of any matter of description of the land intended to be conveyed. It is thought, though, the ruling should not be adhered to that there was not in the record sufficient extrinsic evidence to aid in the description and identification of the land referred to in the mineral deed. Besides oral evidence, there was the written affidavit of W. F. Smith which in effect was an admission of the correct description of the land intended to be conveyed by the mineral deed.

The judgment of this court is therefore changed, and the judgment of the trial court is affirmed as respects R. H. Busby, but is reversed and here now rendered in favor of F. L. Sorrelle and R. F. Fails, denying cancellation of the mineral deeds made to them by R. H. Busby; the appellant R. H. Busby to pay one-half the costs of the appeal and of the trial court, and the appellee W. H. Smith to pay one-half of all costs of the appeal and of the trial court.

The motions for rehearing of appellants and appellees are overruled except as herein stated.