UNDERWOOD STATE BANK, a Corporation, Appellant, v. JOHN G. WEBER, Cleveland State Bank, a Corporation, John O'Donnell and Molius Dronen, Respondents.

(193 N. W. 602.)

**Chattel mortgages — evidence held sufficient to establish that note secured by chattel mortgage paid before foreclosure action.**

1. In an action to foreclose a chattel mortgage securing a note for $1,500, the evidence is examined, and it is *held* that the note had been paid and discharged prior to the bringing of the action.

**Disposition of cause.**

2. The findings and judgment of the trial court are reviewed and modified as to the amount of defendant's indebtedness existing at the time of the giving of the note in suit.

**Judgment — on counterclaim denied where rights of strangers to record involved.**

3. A judgment on a counterclaim will be denied where the transactions out of which the claim arose were with persons who are not parties to the record and where the rights of such third parties are involved.

Opinion filed April 20, 1923. Rehearing denied May 12, 1923.

Appeal and Error, 4 C. J. § 3169 p. 1157 n. 8, 9; Chattel Mortgages, 11 C. J. § 485 p. 695 n. 80; Judgments, 33 C. J. § 61 p. 1106 n. 58.

Appeal from the District Court of Stutsman County, *Coffey,* J.

Judgment modified and affirmed.

*Knauf & Knauf,* for appellant.

*J. A. Hyland,* for respondent.

BIRDZELL, J. This is an action to foreclose a chattel mortgage securing a note for $1,500, dated October 21, 1920, and payable on demand. Judgment was entered in the court below in favor of the defendant and the plaintiff appeals. For some years prior to the transactions involved herein, the defendant Weber was a farmer living in the vicinity of Underwood. In 1908 he contracted for the purchase of 480 acres of land from one Casey, later obtaining title by deed dated December 9, 1916. He placed an $8,000 mortgage on the land and gave Casey a quitclaim deed to the coal rights. In the course of time he became indebted to three banks in Underwood, the First National, the Security State and the Underwood State Bank, the plaintiff herein. In the fall of 1920, he was desirous of settling his affairs in and about Underwood preparatory to moving to a place near Cleveland in Stutsman county, where he resided at the time this action was brought. To this end he conducted an auction sale and entered into negotiations with the plaintiff bank and with three individuals, who were directors and officers of the bank, namely, Bauer, cashier, Tauer, president, and Klein, vice president, for a liquidation of his indebtedness and for the sale of his land. October 21, 1920, the defendant went to the plaintiff bank for the purpose of effecting a settlement of his affairs preparatory to moving. It appears that there was an understanding, in fact a contract, that Bauer, Tauer, and Klein were to take the defendant's land at $39 per acre. They were to assume the incumbrances against it and apply the defendant's equity in liquidation of his indebtedness, the

amount of this equity being disputed as will subsequently appear. The defendant at the time owed the First National Bank on notes, $3,657.07, the Security State Bank, $4,338.23, the plaintiff bank, $1,850, with perhaps some small items of interest. An overdraft and interest items owing to the plaintiff amounted to $434.90. On this day Weber executed the $1,500 note in suit, a note of $1,000 (the execution of this note is disputed by defendant) and one of $2,657.07. According to the contention of the plaintiff herein, the $1,000 note and the $1,500 note together represent the balance owing by the defendant after applying his equity in the land towards the payment of the obligations mentioned above and which were either paid or assumed by Bauer, Tauer, and Klein. The defendant, however, contends that the $1,500 note alone represents the balance so found to be owing. And it is his further contention that this is more than he in fact was owing at the time of the settlement. There were two items of personal property left behind by the defendant when he moved, a threshing rig and a header. Negotiations had been practically completed with one Grabinger for the sale of the threshing rig for $1,000, and after the defendant had left the country it was sold to him for $950. Later the header was likewise sold for $175 and the amount of $1,225 less a small item not necessary to mention here was thus realized by the plaintiff. The plaintiff credited the proceeds of the threshing machine sale on the $1,000 note, but at the time of the trial had given no credit for the header owing, as Bauer claimed, to a misunderstanding relating to a charge for a new canvas, ($28), which it was necessary to furnish.

The following fall of 1921, when the defendant decided to sell his crop, he could not do so on account of the mortgage in question here, and he went to Underwood for the purpose of effecting a settlement. He was, however, unsuccessful, but upon his return to Cleveland an arrangement was made by telephone whereby on the payment of $500 the mortgage would be released so far as the crop was concerned. This $500 was paid. The present action was later begun.

Upon the trial it became apparent to the court that the action had taken on the aspect of an accounting and it required the plaintiff to produce the various notes in its files which had been renewed and retained as collateral and which it had acquired from the other banks

mentioned by virtue of the real estate transaction. They are all exhibits in the case.

The main controversy in the court below centered about an item of $1,920 in the real estate transaction which Bauer, Tauer, and Klein claimed they had withheld with Weber's assent on account of an alleged defect in title, due to the quitclaim deed of the coal rights to Casey; and about the $1,000 note, executed October 21, 1920, which the defendant contends was not executed or, if executed, that it only evidenced a renewal of part of his original obligations to the First National Bank, all of which had been assumed by Bauer, Tauer, and Klein along with the other indebtedness. As stated above the plaintiff contends that this note was a portion of the balance struck which was put into a separate note and left unsecured with the understanding that the proceeds of the threshing machine sale would liquidate it.

The trial court found that on the 21st day of October the defendant owed the plaintiff bank $2,500 and that he gave the two notes of $1,000 and $1,500; that the real estate deal above mentioned was had for and in behalf of the bank in so far as liquidating the debts of the defendant to the bank was concerned; that there was no settlement or accounting between the purchasers of the land and the defendant; that there was no agreement authorizing the purchasers of the land to withhold money from Weber for the purpose of liquidating an alleged claim arising out of the coal right transaction; and that the purchasers of the land, after liquidating Weber's indebtedness, still retained the sum of $881.27 rightfully belonging to the defendant. The judgment entered, however, is simply to the effect that the chattel mortgage and all of the notes produced by the plaintiff bank are discharged and that defendant recover his costs. In a memorandum opinion the trial court had said he was holding that Weber was entitled to recover the amount retained on account of the coal right claim with 6 per cent interest from October 21, 1920; that it should be applied on the two notes ($1,000 and $1,500) in full payment; and that Weber have judgment against the plaintiff for the remainder or balance. It will be seen that the judgment does not conform to the decision announced.

Upon this appeal the principal contention of the appellant is that it should be permitted to foreclose its mortgage for a balance claimed to be due after crediting the cash payment of $500 in the fall of 1921

and the amount realized for the header. For the purpose of this contention the $1,000 note is considered as having been discharged by the threshing machine transaction and the payment of $50 by Bauer, Tauer, and Klein.

We are of the opinion that the finding of the trial court to the effect that the $1,500 note and the mortgage were fully satisfied is correct. Our reasons for this conclusion may be briefly stated. Bauer did not testify that Weber owed the bank, on October 21, 1920, $2,500. He said the amount was $2,450. The notes that were executed that day were the $1,500 note secured by the chattel mortgage in question, the $1,000 note, and a note for $2,657.07, the latter two of which, according to the account filed by Bauer himself, operated to evidence a renewal of the indebtedness of Weber to the First National Bank of Underwood, which, according to the arrangement, was to be paid or assumed by Bauer, Tauer, and Klein. The pencil notations on the $1,000 note, presumably placed there by Bauer or by some officer or agent of the plaintiff bank, are identical with those placed upon the note for $2,657.07. These circumstances tend strongly to show that the bank must have treated the $1,000 note as part of the indebtedness which all agree the purchasers of the land were assuming. Furthermore, the statement which the trial court required the plaintiff to produce showing the status of Weber's account does not show him to have been indebted to the bank in the sum of $2,450, as testified to by Bauer, nor $2,500, as found by the trial court, but it shows, after taking credit for the $1,920 on account of the coal right conveyance and taking into consideration the giving of the $1,500 note and the $1,000 note, that Weber was overpaid or overcredited to the extent of $189.25. It thus becomes quite apparent that no balance was struck on the basis of allowing the claim of $1,920, as no reason appears in this record why the bank would over credit Weber to this extent at a time when he was giving secured paper for his remaining indebtedness, and it is only by allowing this amount that the account can be made to show that Weber owed approximately $2,450 as claimed, or, to be exact, $2,689.25. The other findings of the trial court are in reality consistent with this view, for the judge affirmatively finds that Weber never agreed to allow the $1,920 item. In the light of these discrepancies in the plaintiff's account and in the testimony produced in support of the plaintiff's claim,

we are of the opinion that the version of Weber is nearer correct when he says that the amount agreed upon as a balance was $1,500. Whether such was in fact the amount of his indebtedness we shall not undertake to determine. Clearly the plaintiff's evidence, though it kept account of its business with Weber does not satisfactorily establish any different amount. Hence we are of the opinion the $1,000 note was given just as the note for $2,657.07 was given, to evidence a portion of the indebtedness to the First National Bank, and was to be treated in the same manner. We find that it did not represent any part of the balance Weber was thought to be owing the bank. The $1,500 secured note, the one in suit, represented that balance. According to all of the testimony, ample payments have been made to discharge this note. We therefore conclude that the judgment of the trial court is right in so far as it finds this note to have been paid and satisfied but erroneous in so far as it finds Weber to have been indebted to the bank in the sum of $2,500.

In addition to the demand for a trial de novo in this court the appellant has particularly specified as error the findings of the trial court to the effect that the land contract was a bank transaction. (2) That the defendant was entitled to a credit of $1,920 with interest against the plaintiff bank. (3) That the $1,920 item was due from the officers and directors of the plaintiff bank and a proper offset against it. On the other hand, respondent contends that judgment should be entered in his favor for the amount of $906.15, inasmuch as the record shows that by disallowing the coal right damage claim he has overpaid his indebtedness to the plaintiff to that extent. Upon this record we can see little merit in any of these contentions. It will be noted that the findings and judgment of the trial court did not embody those features of the memorandum opinion to which counsel for the appellant objects in the specific errors referred to. The finding was limited. It was only to the effect that the land transaction was conducted on behalf of the bank and the bank bound thereby insofar as the liquidation of Weber's indebtedness to it was concerned. While there is also an affirmative finding to the effect that the individual purchasers of the land retained $881.27 of money rightfully belonging to the defendant, that finding is not made the basis of any judgment against them; nor could it well be, for they are not parties to this proceeding. Neither is there any

judgment against the bank on the counterclaim. The reasonable inference from this circumstance is that the trial court doubted the propriety of litigating the coal right damage claim in this action to any greater extent than to determine whether or not that the defendant had assented to the allowance of any definite amount therefor and to the extent of holding the bank bound by its agreement of novation. Thus it held that the bank accepted Bauer, Tauer, and Klein instead of Weber as its debtor to the extent of the obligations owing by Weber to it and to the other banks. The judgment being thus limited does not injure the plaintiff and appellant beyond its effect on the defendant's indebtedness.

As to the respondent's contention that judgment should be entered against the bank for the overpayment or surplus in its hands, we are of the opinion that it must be denied, except for the small overpayment on the $1,500 note, for the reason that the parties principally concerned with the disputed damage claim were not before the court. We think the trial court properly limited its findings concerning this transaction to the effect upon Weber's indebtedness to the bank and that on this record the rights of Bauer, Tauer, and Klein, arising under the covenants of warranty in the deed, should not be litigated as between them and Weber. Had it been the desire of the defendant to have litigated this question it would seem that he should have made his grantees parties to the suit. We are of the opinion that the judgment in this action should not be res judicata concerning any question of breach of warranty between Weber and his grantees, except that the latter must be credited with the discharge of Weber's obligations to the banks to the extent that the judgment herein finds them to have been satisfied. Similarly any findings concerning the coal right damage claim may be considered as stricken from this record, except the finding that Weber did not agree to its settlement upon any definite basis.

Our finding that at the date of settlement Weber's obligation to the bank was considered to be $1,500, for which he gave the secured note in suit, leads to the conclusion that this note was overpaid through monies received by the bank that should have been applied as follows: threshing machine $950; header $175; payment by check $500. With allowance for interest on the unpaid principal, taking into consideration the time the credits should have been entered, there must be an affirmative judgment for the defendant and respondent to the extent of

his overpayment of this note. As so modified the judgment appealed from is affirmed. The respondent will recover costs on this appeal.

BRONSON, Ch. J., and CHRISTIANSON and JOHNSON, JJ., and COOLEY, Dist. J., concur.

NUESSLE, J., disqualified, did not participate, Honorable CHAS. M. COOLEY, Judge of First Judicial District, sitting in his stead.