[File No. 7353]

CLARENCE DIXON and ELIZABETH DIXON, Appellants, v. W. C. KAUFMAN, JR., United States Smelting, Refining and Mining Company, Andrew H. Gay, Cyrus B. Frost, Sabine Royalty Corporation, Union Oil Company of California, a corporation, Los Nietos Company, a corporation, Phillips Petroleum Company, a corporation, and The California Company, a corporation, Respondents.

(58 NW2d 797)

634

Filed May 7, 1953. Rehearing denied June 19, 1953

*Paul Campbell,* for appellants.

*Cox, Cox, Pearce & Engebretson* and *Traynor & Traynor,* for respondents.

Morris, Ch. J.  This is a statutory action to quiet title (Chapter 32–17 NDRC 1943) wherein Clarence Dixon alleges that he is the owner of and has an estate and interest in the real property involved in the action which, for convenience of discussion, will be separated into two tracts, the first being the Southeast Quarter (SE¼) of Section Thirty-six (36) in Township One Hundred Sixty (160) North, of Range Eighty-three (83) West, which will be hereinafter known as the school land because it was acquired by Clarence L. Dixon from the State of North Dakota through the Board of University and School Lands by patent dated October 29, 1945.  The second tract consists of the East Half (E½); East Half of the Southwest Quarter (E½ SW¼) Lots Three and Four (3–4) of Section Thirty-one (31) Township One Hundred Sixty (160) North, of Range Eighty-two (82) West, except Soo Railway right-of-way and except 7.73 acres released for highway.  This tract will be hereinafter identified as bank land because it was acquired through the Bank of North Dakota by state treasurer's deed on December 8, 1943. It is alleged that the plaintiffs are husband and wife, make their home on one quarter section of this land, and have done so for many years past.

The school land was purchased by Clarence Dixon at a public sale held in Bottineau County on August 28, 1945, and pursuant thereto he entered into a contract with the State of North Da-

kota, through the Board of University and School Lands, which contained the following provision:

"The grantor, however, reserves to itself fifty (50) per cent of all oil, natural gas, or minerals which may be found on or underlying such land as required by Chapter 149 of the Session Laws of North Dakota for 1939 as amended by Chapter 165 SL of North Dakota for 1941 (Sec 38–0901, Code 1943), together with the right of ingress and egress at all times for the purpose of mining, drilling, exploring, operating and developing said land for oil, gas, and other minerals, and storing, handling, transporting and marketing the same therefrom with the right to remove from said land all of Grantor's property and improvements."

After providing for the issuance of patent upon payment of full purchase price, it was further provided:

"said patent, however, shall contain the reservation required by Chapter 149, Laws of 1939, as amended as aforesaid by Chapter 165, SL 1941. (Sec 38–0901, Code 1943.)"

Section 38–0901 NDRC 1943 provides:

"In every transfer of land, whether by deed, contract, lease, or otherwise, by the state of North Dakota, or by any department thereof, fifty percent of all oil, natural gas, or minerals which may be found on or underlying such land shall be reserved to the state of North Dakota. Any deed, contract, lease, or other transfer of any such land made after February 20, 1941, which does not contain such reservation shall be construed as if such reservation were contained therein. The provisions of this section shall apply to all lands owned by this state or by any department thereof regardless of how title thereto was acquired."

The patent under which Dixon claims title recites that he has complied with his contract of purchase and is entitled to a patent "subject, however, to all legal reservations and exceptions made by law." And the grant recited in the patent provides: "reserving and excepting from the operation of this grant all rights and privileges vested in the State of North Dakota under the provisions of the constitution and laws of said state."

The history of the acquisition of the bank land by Clarence L. Dixon shows that on January 26, 1942, he entered into a con-

tract with the state treasurer, as trustee for the State of North Dakota, which contained the provision "That vendor hereby reserves to the State of North Dakota fifty per centum (50%) of all oil, natural gas and minerals which may be found on or underlying said land . . . ." The state treasurer's deed issued to him pursuant to this contract provided:

"Reserving and excepting, however, to the State of North Dakota, fifty per centum (50%) of all oil, natural gas and minerals which may be found on or underlying said lands, pursuant to the provisions of Chapter 165 of the 1941 Session Laws of North Dakota, and further reserving and excepting title to all archaeological materials, whether found upon or below the surface of said lands, pursuant to the provisions of Chapter 223 of the 1939 Session Laws of North Dakota, and further excepting all minerals, including oil, gas and coal, and all mineral rights not now owned by the party of the first part according to the records in the office of the Register of Deeds of said County and State, . . . ."

The instruments of title by which Clarence L. Dixon has established his right, title, and interest which he originally acquired in the property were subject to the reservation, among others, of fifty per cent of all oil, natural gas, or minerals that may be found on or underlying the land. The issues revolve around the ownership of oil, gas, or minerals on or underlying the land, the validity of certain oil leases, and the right of some of the defendants to enter upon the surface for the purpose of exploiting that which lies underneath.

The answering defendants present claims to or interests in the property in question that fall into two categories—one, fee simple title to a fractional part or a percentage of all the oil, gas, and other minerals on or under the land; two, a leasehold interest in and to oil, gas, and other minerals lying on or under said lands or specifically described portions thereof. We will first consider the issues presented by the claims of those defendants who assert that they are owners in fee simple of an interest in the oil, gas, and other minerals. Neither the State of North Dakota nor any of its agencies or departments are parties to this action. There is, consequently, no issue with respect to

the ownership of the fee simple title to fifty per cent of all oil, natural gas, or minerals under any of these lands reserved in and by the patent and the treasurer's deed issued in behalf of the state by its duly constituted officials. The trial court properly rendered no judgment herein affecting the interests of the state reserved in the conveyances to the plaintiff Dixon.

The defendant Kaufman claims no present interest adverse to the plaintiffs. He nevertheless answered and alleged that the plaintiffs sold to him on December 22, 1949, an undivided one-half interest in all oil, gas, and other minerals on and under the land involved in this action; that the plaintiffs executed and delivered to him a mineral deed conveying such interest, which deed was duly recorded on December 23, 1949, in the office of the Register of Deeds of Bottineau County. He then alleges that thereafter and on December 24, 1949, he conveyed by mineral deed in writing an undivided one-fourth interest in all of the oil and gas and other minerals under the land to the United States Smelting, Refining and Mining Company of Salt Lake City, Utah. He further alleges that on the seventh day of January, 1950, he sold to and gave a mineral deed to Sabine Royalty Corporation of Dallas, Texas, for an undivided one-eighth interest in all the oil, gas, and other minerals under the land; and on the sixth day of April, 1950, he gave a similar deed to C. B. Frost for an undivided one-eighth interest in all of the oil, gas, and other minerals. Thus it appears by these conveyances Kaufman divested himself of all ownership.

Kaufman's answer also shows that on March 24, 1950, he gave to Andrew H. Gay of Sheridan, Wyoming, an oil, gas, and mineral lease covering the Southeast Quarter (SE¼) of Section Thirty-six (36), the school land, for a term of ten years. This lease we will consider further when we discuss leasehold interests.

The answer of the United States Smelting, Refining and Mining Company alleges that it is the owner of an undivided one-fourth interest in and to all of the oil, gas, and other minerals under all of the land herein involved by virtue of a mineral deed from W. C. Kaufman, Jr., dated December 24, 1949, and that it was an innocent bona fide purchaser relying upon the record

title as disclosed in the office of the Register of Deeds of Bottineau County, and that no privity existed between this defendant and W. C. Kaufman, Jr. The defendant Sabine Royalty Corporation pleaded that it became the innocent purchaser from W. C. Kaufman, Jr., on January 7, 1950, of a one-eighth interest in all the oil and gas and other minerals, and the defendant Cyrus B. Frost likewise alleged that he became the owner in fee simple of an undivided one-eighth interest in the oil and gas by virtue of a deed from W. C. Kaufman, Jr., on April 6, 1950, and that he was an innocent bona fide purchaser. Counsel for plaintiffs declined to file a reply to any of the answers although urged to do so by the trial court at a pretrial conference. No question was raised as to the sufficiency of the pleading of bona fides.

The plaintiffs, over objection of defendants' counsel, were permitted to testify to facts tending to show that the deed executed by Clarence L. Dixon and Elizabeth Dixon to W. C. Kaufman, Jr., dated December 22, 1949, conveying a one-half interest in and to all of the oil, gas, and other minerals underlying all of the lands involved herein, was obtained by fraud. At the close of the case, a motion was made to strike the testimony of the plaintiffs with reference to the issue of fraud, the ground for both the earlier objection and the motion being that fraud had not been pleaded and, therefore, could not be proved. The trial court granted the motion striking this testimony and it is now urged on the part of the plaintiffs that the action of the trial court in this respect was erroneous and that fraud, though not pleaded, might properly be shown in this action.

The complaint, being approximately in the statutory form prescribed by Section 32–1704 NDRC 1943 in actions for the determinations of adverse claims, pleads no particulars with respect to the title of the plaintiffs or the anticipated claims of defendants. Such a complaint is sufficient and is not vulnerable to attack the demurrer. While the action is one of statutory form, its nature is essentially equitable. Axt v. Bank of America, 72 ND 600, 10 NW(2d) 430; Wagner v. Stroh, 70 ND 323, 294 NW 195; Northwestern Mutual Savings & Loan Ass'n v. Hanson,

72 ND 629, 10 NW(2d) 599. The defendants, the United States Smelting, Refining and Mining Company, Cyrus B. Frost, and the Sabine Royalty Corporation, all answer separately and set up a deed from the plaintiffs to Kaufman and conveyances from Kaufman by way of a deed to each of these defendants. Each answer alleges the defendant to be an innocent bona fide purchaser for value in reliance on the record title. By way of affirmative relief, each asks that the interest obtained through the deed to Kaufman be adjudged superior to the interest of the plaintiffs. These answers, under decisions of this court, constituted counterclaims. Jester v. Jester, 76 ND 517, 37 NW(2d) 879; Robertson v. Brown, 75 ND 109, 25 NW(2d) 781; Goss v. Herman, 20 ND 295, 127 NW 78; Betts v. Signor, 7 ND 399, 75 NW 781; Power v. Bowdle, 3 ND 107, 54 NW 404, 21 LRA 328, 44 Am St Rep 511.

Without further pleading, either by amendment to the complaint or by reply, the plaintiffs sought to attack the deed which the plaintiffs had given to Kaufman by offering testimony tending to show that it was obtained fraudulently by Larson who was the agent of Kaufman. The case was tried to the court without a jury and is now here for trial anew.

The question now confronting us is whether it was necessary for the plaintiffs to reply to the defendants' answers and counterclaims and to plead fraud by way of reply in order to entitle them to attack the Kaufman deed on the ground that it was obtained by fraud. The rule applied, in some states at least, is that in an action to quiet title fraud must be pleaded in order to be available to overcome the effect of a written instrument. See 44 Am Jur, Quieting Title, Section 79. We cannot apply that rule in this case because of the definite statutory declaration to be found in Section 32–1709 NDRC 1943, which provides:

"No reply shall be necessary on the part of the plaintiff, except when the defendant in his answer claims a lien or encumbrance upon the property which, prior to the commencement of the action, was barred by the statutes of limitation, or which shall have been discharged in bankruptcy, or which constitutes only

a cloud, the plaintiff may reply setting up such defense and availing himself of the benefit thereof, . . . ."
This appears to be a unique statutory provision to be found only in this state. It has its origin in Chapter 5, SLND 1901, which was an extensive revision of our statutory law regarding actions to determine adverse claims to real estate, wherein it was provided that no reply should be required on the part of the plaintiff except when he sought recovery for the value of improvements. The law was further amended by Chapter 3, SLND 1909, to include the language above quoted. It has been suggested that this statute, obviating the necessity for a reply, refers only to cases where the defendant has set up a lien or encumbrance and that it has no application to latent claims, particularly those dependent upon parole evidence, that are urged against the validity of an instrument set up by a defendant, the validity of which is challenged by the plaintiff on the ground of fraud or misrepresentation. We cannot give this statute such a restricted construction. It is one of the provisions made by the legislature for conducting a statutory proceeding to quiet title. The legislature having eliminated the necessity for a reply, except in four enumerated instances, this court cannot, by construction or otherwise, create a fifth exception. It is a general principle of statutory interpretation that the mention of one thing implies the exclusion of another. Expressio unius est exclusio alterius. Nome State Bank v. Brendmoen, 70 ND 391, 295 NW 82; State v. Walla, 57 ND 726, 224 NW 211; 50 Am Jur, Statutes, Section 244; Dickinson v. Thress, 69 ND 748, 290 NW 653. In this case the legislature has declared that no reply on the part of the plaintiff is necessary, with four exceptions, none of which directly or by implication includes fraud. Fraud not being within the scope of any exception is provable against a title set up in a counterclaim without being pleaded in a reply.

The defendant Kaufman no longer has any interest in the premises, having executed deeds to the United States Smelting, Refining and Mining Company, Cyrus B. Frost, and Sabine Royalty Corporation. These grantees claim to be bona fide purchasers without notice and for value. They bought their respec-

tive interests from the defendant Kaufman after his deed was of record. That deed was regular on its face and bore an acknowledgment in proper form. A certificate of acknowledgment regular on its face is presumed to state the truth. McCardia v. Billings, 10 ND 373, 87 NW 1008, 88 Am St Rep 729; Patnode v. Deschenes and Leistikow, 15 ND 100, 106 NW 573; Severtson v. Peoples, 28 ND 372, 148 NW 1054. The mineral deed from the plaintiffs to the defendant Kaufman, appearing to be regular in every respect, was presented to the Register of Deeds of Bottineau County on December 23, 1949, and by him recorded in Book 27 of Miscellaneous at page 515.

The grantees of Kaufman were bona fide purchasers to the extent that they acquired the property described in their deeds for value and in good faith without knowledge of the claim on the part of the Dixons that the deed from them to Kaufman had been acquired fraudulently. The plaintiffs argue, however, that their possession of the surface of the property constituted constructive notice regardless of what the records in the register of deed's office showed. They would invoke the rule that open and notorious possession and occupancy of real property by another than his grantor is sufficient to charge the purchaser with knowledge of the rights of the occupant. Earnest v. First National Bank, 56 ND 309, 217 NW 169, and cases cited. However, this court has also held that this rule does not apply where the possession is entirely consistent with the record title. Red River Valley Land and Investment Co. v. Smith, 7 ND 236, 74 NW 194; Ildvedsen v. First State Bank, 24 ND 227, 139 NW 105. In this case we have possession of the surface by the plaintiffs which is entirely consistent with the record in the register of deed's office which shows that they deeded to Kaufman one-half interest in the minerals. There being nothing inconsistent between the occupancy of the plaintiffs and the deed to Kaufman, who is the grantor of the subsequent purchases, the occupancy of the plaintiffs cannot be said to give constructive notice that they questioned that deed. Squarely in point is the case of Logue v. Von Almen, 379 Ill 208, 40 NE2d 73, 140 ALR 251, to which we later refer at greater length, in which the court holds that where the grantors conveyed an undivided one-half interest

in oil and gas with the right to the grantees to enter upon the surface and remove it, and retained the other undivided one-half interest, the possession of the grantors did not serve as notice to subsequent bona fide purchasers. See also Busby v. Smith (Tex Civ App), 53 SW2d 138.

We now turn to the evidence of fraud and its effect upon the titles held by the grantees of Kaufman as bona fide purchasers. The testimony of the plaintiffs, which was first admitted and later stricken on the ground that fraud had not been pleaded, is to the effect that on December 22, 1949, or thereabouts, one Don Larson drove into the farmyard of the plaintiffs, was invited into the house, and told the plaintiffs that he was with an oil company. He did not mention Mr. Kaufman. Plaintiffs' testimony is disconnected, fragmentary, and unsatisfactory, but from it we gather that they claim they understood that Larson wanted to obtain an oil lease on their land from which he said they would get "an eighth royalty or to make it plain a barrel out of every eight." Both of the plaintiffs were present and their testimony substantially agrees. They claim that Larson then asked them to sign some papers and the plaintiff Dixon testifies:

"He gets some papers out of his brief case over here and he fetches them around like this and he asks me to sign them, and I steps up, he handed me a pencil and I signed them and I put on my mittens again and went out."

He further states that the papers were so folded that he could not see the words "Mineral Deed" at the top. Plaintiff testified that his eyes were not good and that he did not read much. Larson left some papers with the plaintiffs which Dixon did not read. Later his wife read them to him. One was a copy of the mineral deed to Kaufman and the other a draft for $200.00 which was never cashed. Dixon understood that he was to get $200.00 which Larson said was a gift. The testimony of Mrs. Dixon corroborates that of her husband. She states that they never had a chance to read the papers they signed, which were an original and a copy of the mineral deed. After Larson left, she put the papers in a buffet drawer and neither of plaintiffs read them until at least two weeks after the transaction was had.

Larson's testimony directly contradicts that of the plaintiffs as to the manner in which the mineral deed was obtained.

After Don Larson left the Dixon residence on December 22, 1949, he took the mineral deed bearing the plaintiffs' signatures to a notary public who had previously taken acknowledgments for the Dixons and was familiar with their signatures. The notary filled out and signed the certificate of acknowledgment attached to the deed. The Dixons were not present. The notary testifies that before executing the acknowledgment he called up Mrs. Dixon on the telephone and asked her if she and her husband signed the instrument and she answered in the affirmative. He did not talk to Mr. Dixon. Mrs. Dixon denies that the notary called her.

An estate in real property may be transferred by an instrument in writing subscribed by the grantor and the instrument need not be acknowledged or witnessed in order to be valid as between the grantor and grantee. Sections 47–1001 and 47–1006 NDRC 1943. Bumann v. Burleigh County, 73 ND 655, 18 NW 2d 10. An exception to this rule, however, is to be found in the statutory provisions regarding the transfer of title to a homestead.

The question next to be considered is, assuming that Larson perpetrated a fraud upon the plaintiffs when he obtained the mineral deed by leading them to believe they were signing an oil lease instead of a deed, whether the grantees of Kaufman who purchased in good faith without notice of the fraud, for value and relying upon the record in the office of the register of deeds which was in all respects regular, became bona fide purchasers.

This court has held in an early case that:

"It is only where a duly executed and recorded conveyance is absolutely void that the record fails to give constructive notice, and in such case neither constructive nor actual notice could aid the void instrument." Roby v. Bank, 4 ND 156, 59 NW 719, 50 Am St Rep 633.

A deed that is absolutely void passes no title. It gives no constructive notice and a claim of bona fides may not be based upon a void instrument, even when placed of record in the man-

ner prescribed by statute. 45 Am Jur Records and Recording Laws, Section 106; 26 CJS Deeds, Section 68. A deed obtained by fraud is sometimes void but more often is merely voidable, depending upon the facts on which the claim of fraud is based. 55 Am Jur, Vendor and Purchaser, Sections 666 and 667; 16 Am Jur, Deeds, Section 35; 45 Am Jur, Records and Recording Laws, Section 106; 26 CJS, Deeds, Section 68b. Uniformity does not prevail among the courts as to the circumstances of fraud which will render a deed void and inoperative as against the claims of an innocent purchaser. It would seem, however, that in such cases the innocent purchaser should be protected unless the fraud is clear, unequivocal, and its force undiminished by a lack of care on the part of a mentally competent, defrauded grantor.

"Where the rights of an innocent purchaser may be affected by holding the deed inoperative to pass title, only unusual circumstances, such as misreading the instrument to a blind or illiterate person, fraud on a mentally defective person, the surreptitious substitution of one instrument for another, or representation of its contents by a person in whom the grantor is entitled to place confidence, will support a plea of fraud as to the character of the instrument." 16 Am Jur, Deeds, Section 35, page 458.

The plaintiffs were literate people of seeming normal mentality. They had engaged in a number of previous business transactions, including the acquisition of titles to land and the execution of oil leases. If we accept the version of the plaintiffs as to what happened at the time the mineral deed was executed, a fraud was perpetrated. As an aftermath, innocent purchasers paid valuable considerations for other mineral deeds based on the one obtained by fraud. If a loss results to parties ignorant and innocent of the fraud, it must fall on those whose lack of care and attention made the fraud possible rather than upon those who were wholly unconnected with the fraudulent transaction. If the plaintiffs, or either of them, had read or even looked at the mineral deed before they signed it, they would have known what they were signing. The words "mineral deed" in black capital letters three-eighths of an inch high appear on

the face of the instrument and also on the back. Not only did they fail to read before they signed, but they did not read the mineral deed until some two weeks later. Their misplaced confidence in Larson resulted in a loss for which they must bear responsibility as against bona fide purchasers with respect to their non-homestead lands. Pure Oil Co. v. Swindall (Tex Com App), 58 SW2d 7; Busby v. Smith (Tex Civ App), 53 SW2d 138; McArthur v. Johnson, 61 NC 317, 93 Am Dec 593; Lanier v. John L. Roper Lumber Co., 177 NC 200, 98 SE 593.

The situation is entirely different with respect to the plaintiffs' homestead, the Southwest Quarter (SW¼) of Section Thirty-one (31). A conveyance of a homestead must not only be signed by the husband and wife but must be acknowledged by each of them. Section 47–1805 NDRC 1943. A conveyance of a homestead that is not executed and acknowledged by both the husband and wife is void. Nichols v. Schutte, 75 ND 207, 26 NW2d 515; Acklin v. First National Bank, 64 ND 577, 254 NW 769; Hazlett v. Mathieu, 57 ND 57, 220 NW 647; Rasmussen v. Stone, 30 ND 451, 152 NW 809; Conlon v. Dickinson, 72 ND 190, 5 NW2d 411, 142 ALR 525; Engholm v. Ekrem, 18 ND 185, 119 NW 35; Severtson v. Peoples, 28 ND 372, 148 NW 1054; Silander v. Gronna, 15 ND 552, 108 NW 544, 125 Am St Rep 616; Helgebye v. Dammen, 13 ND 167, 100 NW 245. The evidence shows that the mineral deed was never acknowledged by the husband and there is a dispute as to whether it was acknowledged by the wife over the telephone. We need not here determine whether an acknowledgment so taken is valid. The failure of one spouse to acknowledge either a conveyance or encumbrance of a homestead renders the instrument invalid. Hazlett v. Mathieu, supra; Rasmussen v. Stone, supra. We reach the conclusion that the mineral deed, in so far as it purports to convey the homestead, is absolutely void.

The case of Logue v. Von Almen, 379 Ill 208, 40 NE2d 73, 140 ALR 251, is in point here. Seven plaintiffs who were tenants in common of 120 acres of land brought the action to remove certain mineral deeds as clouds upon their title. A deed purporting to convey an undivided one-half interest to all of the oil, gas, and other minerals in the tract of land was executed by all but

one of the plaintiffs. The grantee was Von Almen, who, shortly after obtaining the deeds, conveyed fractional interests to other parties who were bona fide purchasers. The transaction was handled by one Smith who testified he was working for Von Almen. It was claimed that the deed executed by the cotenants to Von Almen was void for lack of consideration and fraud in its execution and for failure of the deed to carry a valid acknowledgment. The acknowledgment was void because taken by Smith who had a financial interest in the deed. With respect to the defendants who claimed to be bona fide purchasers it is said:

"The proof shows each of them paid a valuable consideration for their respective interests and that they did not participate in any way in procuring the deed from plaintiffs. There is no evidence that any of them had notice of any character that the deed had been procured through the fraud of Smith. In disposing of their contentions the distinction must be kept in mind between the effect of a void deed and one that is voidable. A void deed passes no title and can not be made the foundation of a good title even under the application of the equitable doctrine that protects *bona fide* purchasers."

It is then pointed out that Willie Logue had a homestead interest and that as to him the deed was absolutely void because it failed to carry a valid acknowledgment, although the acknowledgment was regular on its face. It was also held that the defective acknowledgment did not make the conveyance void as to those grantors who had no homestead interest and that the deed as to them was only voidable because the fraud practiced upon them was fraud in the inducement which did not make it void as against innocent purchasers. The situation in that case with respect to the homestead interest of Willie Logue is similar to the case at bar. The mineral deed to Kaufman was absolutely void as to the homestead because it was not acknowledged as the statute prescribes and the bona fide purchasers from Kaufman obtained no title with respect to the homestead minerals. As to the remainder of the land, the deed was voidable and subject to being set aside as to Kaufman but it is valid and enforceable as to the rights of those defendants who are innocent purchasers for value.

At this point we have determined that the title to the property described in the complaint, subject to valid outstanding leases, is as follows: 1. Clarence Dixon, all of the surface; 2. Elizabeth Dixon, a homestead interest in the Southwest Quarter (SW¼) of Section Thirty-one (31), subject to a reservation of one-half of all oil, natural gas, and minerals which may be found on or underlying the property in the State of North Dakota; 3. Clarence Dixon and Elizabeth Dixon, one-half of all oil, natural gas, and minerals which may be found on or underlying the property, the Southwest Quarter (SW¼) of Section Thirty-one (31) (homestead); 4. United States Smelting, Refining and Mining Company, one-fourth of all oil, natural gas, and minerals which may be found on or underlying the property, except the Southwest Quarter (SW¼) of Section Thirty-one (31); 5. Sabine Royalty Corporation, one-eighth of all oil, natural gas, and minerals which may be found on or underlying the property, except the Southwest Quarter (SW¼) of Section Thirty-one (31); 6. Cyrus B. Frost, one-eighth of all oil, natural gas, and minerals which may be found on or underlying the property, except the Southwest Quarter (SW¼) of Section Thirty-one (31); 7. The State of North Dakota, one-half of all oil, natural gas, and minerals underlying or found on the property.

The State of North Dakota, through the state treasurer as trustee, on September 28, 1949, leased to the defendant, the California Company, an undivided one-half interest in all the oil, gas, and other minerals underlying the bank land by which the state was to get, in addition to other considerations, the equal of one-eighth part of the oil produced and saved from the premises.

On July 22, 1949, the State of North Dakota, through the Board of University and School Lands, entered into a similar lease with the defendant Union Oil Company of California as lessee. This lease was later and on December 1, 1949, assigned to the defendant Los Nietos Company.

The plaintiffs challenge the validity of these leases issued by the state and particularly the right of the state or its lessees to enter upon the surface of the land to explore for or exploit the oil, gas, or other minerals which it has reserved. The points

which the appellants attempt to raise with respect to these leases cannot be determined without prejudice to the rights of the state, which is not a party to the action. Obviously, they cannot be determined and no binding judgment can be entered with respect to them. This action must therefore be dismissed without prejudice as to those defendants who hold oil and gas leases derived from the State of North Dakota. Underwood State Bank v. Weber, 49 ND 814, 193 NW 602.

The interest of the defendant Phillips Petroleum Company in the subject of the action arises in this manner: On April 7, 1949, the plaintiffs, Clarence Dixon and Elizabeth Dixon, executed and delivered to the Carter Oil Company an oil and gas lease on the bank land, which was recorded in the Office of the Register of Deeds of Bottineau County, on April 20, 1949. On December 1, 1949, the Carter Oil Company assigned to the Phillips Petroleum Company an undivided one-half of all of its right, title, and interest in the lease. It will be noted all of these transactions and the recording of the instruments took place prior to December 22, 1949, which was the date of the mineral deed from the plaintiffs to W. C. Kaufman, Jr. The Carter Oil Company is not a party to this action. No attack is made by any of the parties upon the validity of the Carter Oil Company lease or the assignment to the Phillips Petroleum Company.

There remains to be considered the leasehold interest of Andrew H. Gay to whom W. C. Kaufman, Jr. executed and delivered an oil and gas lease on March 24, 1950, covering all of the Southeast Quarter (SE¼) of Section Thirty-six (36), which is the school land. At the time this lease was executed, the lessor held the questioned mineral deed from the plaintiffs purporting to convey to him one-half of the oil, natural gas, and other minerals on or under this land. At the time of executing this lease Kaufman had already deeded a one-fourth interest to the United States Smelting, Refining and Mining Company and a one-eighth interest to the Sabine Royalty Corporation, leaving in himself the remaining one-eighth interest. The lease therefore could become effective only as to that interest. After executing the lease and on April 6, 1950, Kaufman deeded his remaining one-eighth interest to Cyrus B. Frost, thus divesting

himself of all interest in the property. As we have previously determined, the deeds conveying the school land from Kaufman to these grantees are valid as against the plaintiffs. Thus the plaintiffs have been divested of all interest in the property covered by the lease from Kaufman to Gay and are in no position to question its validity. Neither has the lease been questioned by any of the defendants.

The trial court determined that the defendant Gay has a valid leasehold interest covering an undivided one-eighth interest in the oil, gas, and other minerals on and under the Southeast Quarter (SE¼) of Section Thirty-six (36). This determination is correct, as is his determination with respect to the interests of the California Company and Phillips Petroleum Company. The trial court rendered judgment decreeing that Clarence Dixon is the owner of the surface of the land, subject to the outstanding leases that we have discussed and also subject to the ownership of the oil, gas, and other minerals as follows: State of North Dakota, one-half interest; United States Smelting, Refining and Mining Company, one-fourth interest; Cyrus B. Frost, one-eighth interest; Sabine Royalty Corporation, one-eighth interest. We have determined that the deed dated December 22, 1,949, from Clarence L. Dixon and Elizabeth Dixon to W. C. Kaufman, Jr., purporting to convey an undivided one-half interest in all of the oil, gas, and other minerals on and under the land herein involved is void as to the Southwest Quarter (SW¼) of Section Thirty-one (31) in Township One Hundred Sixty (160) Range Eighty-two (82), being the homestead of the plaintiffs, and that none of the grantees of W. C. Kaufman, Jr., acquired an interest therein. The plaintiff Clarence Dixon is entitled to have title quieted in him as to W. C. Kaufman, Jr., and all persons claiming an interest in the Southwest Quarter (SW¼) of Section Thirty-one (31) by or through him. The judgment appealed from will be modified to so provide, and will further provide as to the defendants holding leases from the state, being the California Company and the Los Nietos Company, that the

action, including the counterclaims of these defendants, be dismissed without prejudice.

BURKE, SATHRE, CHRISTIANSON and GRIMSON, JJ., concur.