**DOCKTER et ux. v. CRAWFORD et al.**

No. 7447.

Supreme Court of North Dakota.

Sept. 2, 1954.

Lanier, Lanier & Knox, Fargo, for plaintiffs and respondents.

Cox, Cox, Pearce & Engebretson, Bismarck, for defendants and appellants.

JOHNSON, Judge.

On May 28, 1952, the plaintiffs commenced an action against the defendants to determine adverse claims and quiet title to 1,280 acres of land described as:

the Northwest Quarter (NW¼) of Section Fifteen (15); all of Section Nine (9); the Southwest Quarter (SW ¼) of Section Ten (10); and the South One-half (S½) of Section Four (4),

all in Township One Hundred Thirty-eight (138), Range Sixty-nine (69).

The actual purpose of the action is to set aside and have declared void a mineral deed given by the plaintiffs to the defendant, D. W. Crawford, to an undivided one-half interest in and to all of the oil, gas, and other minerals in and under the above described land and that may be produced therefrom. The transaction resulting in the mineral deed to D. W. Crawford took place in the home of the plaintiffs on their farm on June 13, 1950. On the same day the plaintiffs executed an oil, gas, and mineral lease to B. E. Winder of Ft. Worth, Texas, covering the same real property described in the mineral deed. The oil, gas, and mineral lease is not involved in this action.

The defendants are the grantees of D. W. Crawford or James H. White and W. C. Duncan, who purchased an undivided three-sevenths interest of the minerals granted to D. W. Crawford and in turn sold them to other parties defendant, except Abe Applebaum, who is a grantee of D. W. Crawford. The plaintiffs claim that the mineral deed covering the 1,280 acres was obtained by fraud. D. W. Crawford answers and denies the allegation of fraud and states that he obtained the minerals for value; that thereafter he transferred a one-fourteenth interest to Abe Applebaum and a three-sevenths interest to James H. White and W. C. Duncan. Abe Applebaum and the other defendants answer that they are innocent purchasers for value.

The case was tried to the court and resulted in judgment for the plaintiffs. The defendants appealed and demanded a trial de novo.

There are two issues for determination. The first and primary issue is whether or not the mineral deed covering the 1,280 acres was obtained from plaintiffs by fraud and misrepresentation so as to render it void, and second, whether or not Abe Applebaum, James H. White, and W. C. Duncan and their grantees are innocent purchasers for value, and take the minerals deeded to them free from fraud, if any was involved.

D. W. Crawford of Gainesville, Texas, was in the business of obtaining oil, gas, and mineral leases and buying minerals in North Dakota in 1950. He was assisted in his operations by his two sons, D. B. Crawford and P. E. Crawford. On the thirteenth day of June, 1950, they went to the home of the plaintiff in Stutsman County, met Mrs. Dockter, and were told that her husband was in the field working. They located him and he accompanied them to his farm home. As a result of the meeting and negotiations between D. B. and P. E. Crawford and the plaintiffs an oil, gas, and mineral lease was executed to B. E. Winder and a mineral deed was executed to D. W. Crawford.

The oil, gas, and mineral lease given by the plaintiffs and running to B. E. Winder was filed for record in Stutsman County on the twenty-sixth day of June, 1950. The mineral deed given by the plaintiffs and running to D. W. Crawford was filed for record in Stutsman County on the twenty-eighth day of July, 1950.

After acquiring one-half of the minerals in the 1,280 acre tract from the plaintiffs, on June 19, 1950, D. W. Crawford made, executed, and delivered a mineral deed for an undivided three-sevenths interest in the minerals in the same tract of land to James H. White and W. C. Duncan. On July 22, 1950, he made, executed, and delivered a mineral deed to Abe Applebaum for an undivided one-fourteenth interest in and to all the oil, gas, and minerals in said tract.

The mineral deed to Abe Applebaum was filed for record in Stutsman County on the twenty-sixth day of July, 1950, and the mineral deed to White and Duncan on the seventh day of August, 1950.

It thus appears that by July 22, 1950, D. W. Crawford had conveyed his entire one-half interest in the oil, gas, and minerals that he obtained from the plaintiffs.

D. W. Crawford bought the minerals for himself. He was not acting as an agent for anyone.

On July 26, 1951, James H. White and W. C. Duncan made and executed a mineral deed conveying an undivided one-twenty-eighth interest in and to all the oil, gas, and other minerals in and under the land conveyed by the original mineral deed from the plaintiffs to D. W. Crawford to Louis E. Nohl and Margaret Elliott Nohl; on September 11, 1951, they executed a deed to a one-sixty-fourth interest in the minerals covering the same property to A. R. Gingras; on October 1, 1951, they executed another mineral deed to an undivided one-thirty-second interest in the same property to Charles I. Francis; on October 20, 1951, they executed another mineral deed to an undivided five-sixty-fourths interest in the same property to O. R. Burden; on January 10, 1952, they executed another mineral deed to an undivided one-thirty-second interest in the same property to William H. Rouzer. The deeds made, executed, and delivered by James H. White and W. C. Duncan to the grantees mentioned were all filed and recorded in Stutsman County within a short time after they were executed and delivered and long prior to the institution of this action.

It is admitted that the plaintiffs did not appear before a notary public. The mineral deed conveying the 1,280 acres tract was notarized by L. Spitzer, a notary public, at Streeter, North Dakota. He is a banker and knew the signatures of the plaintiffs and attached his acknowledgment to the mineral deed. The certificate of acknowledgment is in proper form.

 The home of the plaintiffs is located on the Northwest Quarter (NW¼) of Section Fifteen (15), Township One Hundred Thirty-eight (138), Range Sixty-nine (69). It is homestead property of the plaintiffs. It is conceded by the appellants that the mineral deed describing the 1,280 acres obtained by D. W. Crawford from the plaintiffs is not effective as to the homestead property. Section 47-1805, NDRC 1943; Dixon v. Kaufman, N.D., 58 N.W.2d 797. The mineral deed to the homestead was void. No title to the minerals in or under the homestead passed to D. W. Crawford or any of his grantees or the grantees of his grantees.

The oil, gas, and mineral lease is dated June 13, 1950, and the mineral deed is dated June 14, 1950, and the check in payment is dated June 14, 1950. There is no question that all these documents were signed on the same date, June 13, 1950. It is evident from the testimony of D. B. Crawford that he was under the impression that the deed should be dated subsequent to the mineral lease to make the mineral deed subject thereto.

The plaintiffs assert that the Crawford brothers offered twenty-five cents an acre for an oil, gas, and mineral lease. The Crawfords claim they offered the plaintiffs twenty-five cents an acre for an oil, gas, and mineral lease and a deed to one-half of the minerals. The plaintiffs deny that they told the Crawford brothers that they owned one hundred per cent of the minerals under their land. The mineral deed covers a one-half interest in and to the minerals of the plaintiffs and that is what the Crawfords said they bought. It would appear that some discussion as to the mineral interest of the plaintiffs under their land must have taken place. The Crawfords somehow ascertained that the plaintiffs owned at least one-half thereof and, since they were buying only one-half of the minerals, they must have learned from the plaintiffs that they owned more than a one-half interest. A consideration of $320 was paid to Rudolph F. Dockter. It is contended by the Crawfords that this constituted payment not only for the oil, gas, and mineral lease but also for the mineral deed.

The oil, gas, and mineral lease and the mineral deed were signed by the plaintiffs in their house on the farm. Only they and D. B. Crawford and P. E. Crawford were present at the time of the signing. The Crawfords had taken a typewriter into the house and placed it on a table in the kitchen, and they testify that both the oil, gas, and

mineral lease and the mineral deed were typed in the house in the presence of the plaintiffs. The plaintiffs claim that they did not pay much attention to the typing of these instruments. They do not know whether one or two instruments were typed up. They did not read them. They both admit that they had an opportunity to read the instruments. They did not attempt to examine them. They contend that the instruments stuck together but do not explain how they stuck together. They claim that the oil, gas, and mineral lease was signed first by Rudolph F. Dockter and that then D. B. Crawford pushed up the oil, gas, and mineral lease and he signed the mineral deed. His wife signed in the same manner. It is inferred that the mineral deed was blank when they signed it. The testimony indicates, according to the version of the plaintiffs, that if the oil, gas, and mineral lease was on top of the mineral deed when they signed the instruments, as they contend, it was pushed up far enough so they could see the place for their signatures on the mineral deed, and perhaps a line or so of its body. If it was in blank when they signed it, the acknowledgment being at the bottom of the mineral deed and clearly visible, it should have caught their notice. It is reasonable to suppose that if it was not filled in on the typewriter that would have aroused their suspicion. Both D. B. and P. E. Crawford insist that both instruments were typed in the presence of the parties, the mineral deed being typed while D. B. Crawford and Mr. Dockter looked at the oil, gas, and mineral lease. P. E. Crawford testified that while he was typing the mineral deed D. B. Crawford read the description to him.

The plaintiffs claim that they thought the bottom instrument was a copy of the top one and claim they asked for a copy. No copy was furnished and the Crawfords do not remember that one was requested. The plaintiffs both admit that there was no representation that the second paper or the bottom paper was a copy of the first one, or the top paper. Mr. Rudolph Dockter, in that connection, testified:

"Q. Now you state that Mr. Crawford put one hand on the top of this paper (indicating)? A. Yes, sir.

"Q. And pushed the bottom part of that paper up after you had signed? A. Yes. He said, 'You got to sign once more.'

"Q. And you saw another paper underneath there? A. When he pushed it up, yes.

"Q. Did you ask him what that was? A. I thought that was my copy.

"Q. Did you ask him what that was, I said? A. No.

"Q. There were no reasons for you to believe that was a copy then from anything that he said? A. I knew I had a copy coming.

"Q. There was no reason for you to believe that was a copy from anything he said? A. You mean that he told me that he would give me a copy?

"Q. Yes? A. No.

"Q. He didn't say that that was a copy there, did he? A. No."

Mrs. Dockter also testified in this connection:

"Q. Did anybody tell you that the second paper was a copy of the first one? A. No.

"Q. And you didn't ask? A. No, I didn't ask."

D. B. Crawford admits that he made a remark to the effect that it would take a week to read the oil, gas, and mineral lease. But the testimony shows that this remark was considered as a facetious or jocular remark. Apparently the parties did not rely upon it or take it seriously. Yet it is offered as the only reason for not reading or examining the oil, gas, and mineral lease and the mineral deed. Mrs. Dockter in this connection stated:

"Q. Now did you believe that it would take a week to read that piece of paper? A. I didn't believe it, no."

It is perfectly obvious upon the most casual observation that it would not take a week to read the oil, gas, and mineral lease.

The plaintiffs are intelligent, normal people. Mr. Dockter was born in 1899, and, therefore, 51 years of age when this transaction took place. Both the plaintiffs read and write English. They operate a large farm. They were dealing with complete strangers who had introduced themselves to them. Both the plaintiffs were present the entire time that the Crawfords were there in the Dockter kitchen, although Mrs. Dockter testified that she was attending to the baby and did not pay much attention. It is also apparent from the testimony that Mr. Dockter did not pay close attention to the typing of the instruments. Mr. Dockter testifies that he was gone only about three or four minutes to get some papers against which to check the description of the land. The plaintiffs merely assumed that the second instrument signed by them was a copy of the first one. They had ample opportunity to examine the papers. Both instruments are labeled at the top in bold, black letters. A mere glance at the top of each instrument would have disclosed its nature. The words MINERAL DEED are underscored.

It is a close question whether the evidence preponderates in favor of the plaintiffs as to fraud and whether they have presented facts which overcome the presumption of honest and fair dealings. However, the trial court saw and heard the witnesses and its findings are entitled to appreciable weight. We have come to the conclusion, however, that under all the circumstances the mineral deed executed by the plaintiffs to D. W. Crawford is merely voidable and not void, except as to the homestead property of the plaintiffs.

This case was tried about the same time as the case of Hoffer v. Crawford, N. D., 65 N.W.2d 625, recently decided. All the legal principles therein set forth are applicable to the facts in this case and, on the basis thereof, we conclude that the mineral deed of D. W. Crawford insofar as it covers the homestead property of the plaintiffs is void as to him and all subsequent grantees. The mineral deeds in the hands of innocent purchasers except as to the homestead are valid.

The judgment of the trial court is affirmed as to the homestead property of the plaintiffs. As to the remainder of the real property of the plaintiffs involved in this action, the mineral deeds in the hands of innocent purchasers for value are valid and as to that property the judgment of the trial court is reversed.

MORRIS, C. J., and JOHNSON, GRIMSON, BURKE and SATHRE, JJ., concur.