Clara GLASCOE, Administratrix of the Estate of Carl Siggerud, Deceased, substituted for Carl Siggerud; and Otto Sillerud, Plaintiffs and Respondents,

v.

M. O. BRACKSIECK and Lloyd H. Bracksieck, Defendants and Appellants.

No. 7616.

Supreme Court of North Dakota.

Oct. 10, 1957.

F. Leslie Forsgren, Crosby, for appellants.

R. H. Points, Crosby, and Higgins & Donahue, Bismarck, for respondents.

BURKE, Judge.

This is an action to quiet title to certain mineral interests in property located in Divide County, North Dakota. In their complaint the plaintiffs alleged that they are the owners of the described interests but that certain mineral deeds have been placed of record in Divide County which purport to convey such interests in first instance from the plaintiff Siggerud to Vernon J. Drabek, then from Drabek to the Defendant M. O. Bracksieck, and finally as to a portion of the described interests from M. O. Bracksieck to the defendant Lloyd H. Bracksieck. They alleged further that the plaintiff Siggerud to the best of his recollection did not execute or deliver to Drabek any deed of any mineral interests in the described property and that if the signature of the grantor appearing upon such deed is his genuine signature, such signature was obtained by fraud and trickery. Upon this complaint plaintiffs demanded that the deed from plaintiff, Siggerud, to Drabek be decreed to be void and that title to their respective interests in the described property be quieted in them.

In their answer to this complaint the defendants alleged that M. O. Bracksieck purchased the described mineral interests from Vernon J. Drabek as an innocent purchaser in good faith and for value, that Lloyd H. Bracksieck purchased his interest from M. O. Bracksieck also as an innocent purchaser in good faith and for value. They asked that the complaint be dismissed and that title to their respective interests be quieted in them. At the trial of the case it appeared that part of the property described in the deed from Siggerud to Drabek was in fact the property of the plaintiff Sillerud and the trial court directed the entry of judgment quieting title to the mineral interest in this tract to Sillerud. The trial court also found that the deed from Siggerud to Drabek was obtained by fraud in its execution and was therefore wholly void and ordered judgment quieting title to the remaining mineral interests in Siggerud. Judgment was entered accordingly. The defendants have appealed from the judgment and have demanded a trial anew in this court.

The first issue for determination on this appeal is whether the defendants are good

faith purchasers for value. The fact that the mineral interests in controversy were for sale was first brought to M. O. Bracksieck's attention by an advertisement published in an Oklahoma City newspaper. Upon reading the advertisement he wrote to Drabek asking for more information concerning the property. Drabek replied by telephone and an agreement for the sale of the property was reached. Later Drabek came to M. O. Bracksieck's home, bringing with him his mineral deed. Upon its face the deed appeared to have been regularly executed and acknowledged by Carl Siggerud. It bore a certificate that it had been filed for record in the office of the Register of Deeds of Divide County. On this occasion Drabek delivered to M. O. Bracksieck his acknowledged deed to the mineral interests in controversy and received Bracksieck's check in the sum of $900 in payment therefor. Later Drabek cashed the check. Prior to this transaction Bracksieck had not known Drabek. He had no knowledge of the circumstances in which the deed to Drabek had been executed nor any knowledge of any claim adverse to Drabek's apparent title. Later, M. O. Bracksieck sold a portion of this interest to his brother Lloyd for $400. At the time of this sale, neither brother had knowledge of any infirmities in the chain of title through which they apparently acquired their respective interests. The plaintiffs do not challenge the defendants' good faith because of any notice, actual or constructive, or because of any knowledge, of the existence of any adverse claims. They simply say that defendants cannot be good faith purchasers because neither the deed from Siggerud to Drabek nor the deed from Drabek to M. O. Bracksieck contained the post-office address of the grantee. In support of this contention they cite Sections 47-1007 and 47-1905 NDRC 1943. Section 47-1007 provides:

> "Each deed executed in which real estate is described shall contain the post office address of each grantee named in such deed."

Section 47-1905 provides:

> "No deed in which real estate is described shall be received for record by any register of deeds in this state if the post office address of each grantee named in such deed is not shown."

These two sections were derived from Chapter 249, Laws of North Dakota 1929. This act reads as follows:

> "That each deed, or mortgage, hereafter executed, in which real estate is described, shall contain the postoffice address of each grantee or mortgagee named in such deed, or mortgage, and no deed or mortgage in which real estate is described, shall be received for record by any register of deeds in the State of North Dakota which does not contain such post office addresses."

■ The rule is well established that mere changes in arrangement of sections made in the codification of statutes will not be regarded as altering the law unless the intent to do so is clear. State ex rel. Johnson v. Broderick, 75 N.D. 340, 27 N.W.2d 849; Eisenzimmer v. Bell, 75 N.D. 733, 32 N.W.2d 891; Chester v. Einarson, 76 N.D. 205, 34 N.W.2d 418, 35 N.W.2d 137. In the case of the statutory provisions under consideration the notes of the Code Commission affirmatively state that no change in meaning was intended. It follows that the two code sections above set forth must together be given the construction which reasonably follows from the language of Chapter 249, supra.

■ This chapter provides that deeds of real property must contain the post-office address of the grantee and sets forth that the omission of such address shall make the deed ineligible for recording. There is no intimation or suggestion that the omission of the grantee's post-office address shall make the deed ineffective as a grant. The fact that a deed may lack certain of the requisites for recording does not of itself destroy its effect as a grant. On several occassions we have held that

a deed which is neither acknowledged or witnessed is sufficient to pass title. Dixon v. Kaufman, 79 N.D. 633, 58 N.W.2d 797; Bumann v. Burleigh County, 73 N.D. 655, 18 N.W.2d 10. We are satisfied therefore that the deeds in controversy were sufficient in form to transfer legal title to the described land to the grantees therein named. This is sufficient to constitute the purchasers, good faith purchasers, if they were not otherwise disqualified. 26 C.J.S. Deeds § 24, p. 634, 16 Am.Jur. (Deeds Sec. 71) 480, 92 C.J.S. Vendor and Purchaser § 322, p. 216.

Next we must decide whether the fraud in procuring the mineral deed and the circumstances in which it was executed were of such a nature that the fact that defendants are bona fide purchasers is of no avail to them. There is no question as to the fraud. Plaintiff, Siggerud, is a bachelor farmer who has never engaged in any other gainful occupation. He does not live on a farm but resides in the Village of Noonan. He had an eighth grade education and his business experience has been limited to that usually engaged in by a farmer. At the time of the transaction in controversy he was about 50 years of age and needed reading glasses to read ordinary newspaper print. Albert F. Makee, commonly known as Faye Makee also lived in Noonan. Makee was engaged in the insurance and real estate business. He was also a notary public. Makee's father at one time had operated a bank at Noonan and as a young man Makee had worked in the bank. Makee was married to Siggerud's cousin and Siggerud and Makee had been acquainted since childhood. This acquaintance was of such a nature that although Siggerud and Makee both lived in the same small village neither one had ever visited in the other's home, and insofar as the record shows, they had no business or social associations of any kind. Makee had a reputation in the community for sharp dealing. Siggerud had heard that he was "crooked" but said he didn't believe it.

Siggerud went to Makee's office to execute an ail and gas lease in accordance with an agreement he had made with Makee while visiting at a neighbor's farm. On this occasion, although no mention had been made of any instrument other than an oil and gas lease, Makee had him sign two instruments. When Makee presented the first instrument for signature Siggerud noticed that he had covered the top of it, or that part of the instrument which bore its title in bold faced type with a blotter. Siggerud signed the instrument without asking any questions and without removing the blotter. After this instrument was signed, Makee presented a second instrument which was also signed by Siggerud without any questions. Siggerud did not have his glasses with him at the time. Later it was discovered that Siggerud had signed the mineral deed to Drabek as well as an oil and gas lease.

■ There is no question but that this mineral deed was obtained by fraud. The fraud was in the execution of the instrument and not in the inducement. We have said that even in the case of such a fraud an innocent purchaser will be protected where there is a lack of ordinary care on the part of a mentally competent defrauded grantor. Dixon v. Kaufman, 79 N.D. 633, 58 N.W.2d 797; Hoffer v. Crawford, N.D., 65 N.W.2d 625. In each of the above cited cases it was held that the negligence of the defrauded grantor was such that innocent purchasers of a title derived from the fraudulent grant would be protected. In this case, however, the trial court found that Siggerud was not negligent. He found that because of his limited education and business experience, because of the fact that Makee's wife was Siggerud's cousin, because Siggerud had known Makee since childhood and because Makee was a notary public, it did not amount to a lack of reasonable care on Siggerud's part to sign the instruments in complete and unquestioning reliance on Makee's honesty and integrity.

■ Upon a full consideration of all the facts we have reached a contrary conclusion. In the first place we cannot agree that a man who has operated his own farm or farms for years is a man of limited business experience. The farming of 640 acres is a substantial business. It involves the purchase of seed and supplies, the purchase of expensive machinery, trucks and automobiles, the hiring of help and the sale of produce. Each year, unless there is a crop failure such a farmer will receive and disburse considerably more money than the average city dweller. Business transactions are not a novelty to such a man. Next we do not agree that the fact that Makee was married to his cousin justified Siggerud in dealing with Makee upon a basis other than he would with any casual acquaintance. Clearly, Makee and his wife were no more than casual acquaintances despite the relationship. The record is clear that though they lived in the same small village, there never had been any prior social or business associations between them. Finally, we agree with the trial court that it was not unreasonable for Siggerud to disbelieve the talk he had heard to the effect that Makee was "crooked", but we do not agree that it was reasonable for him to cooperate so completely, with a man whose integrity he knew was openly challenged, in making the fraud possible. Whatever Siggerud may have believed concerning Makee's integrity, it was not ordinary prudence for him to ignore his reputation for dishonesty in dealing with him.

The two instruments which Siggerud signed, in addition to having different titles, are dissimilar in appearance. The mineral deed is a short instrument and an oil and gas lease is a long instrument. He could not have believed that he was signing an original and copy of the same instrument unless he was completely inadvertent at the time. He didn't look at the title of either instrument or make any inquiries concerning them. It is true that he didn't have his glasses with him and no doubt he could not have read the print in the bodies of the instruments, but there is no intimation that he could not have read the large bold face type in which the titles of the instruments were printed. As we view it the facts in this case are so similar to those in Hoffer v. Crawford and Dixon v. Kaufman, supra, that we see no basis for a distinction. Siggerud's "misplaced confidence" in Makee "resulted in a loss for which he must bear the responsibility as against bona fide purchasers."

That portion of the judgment which quiets title in the plaintiff Siggerud to the mineral interest in controversy is therefore reversed.

No issue is raised on this appeal as to that part of the judgment which related to the land of the plaintiff Sillerud. That part of the judgment is therefore affirmed.

GRIMSON, C. J., and JOHNSON, SATHRE and MORRIS, JJ., concur.